2009 UT App 170

**Robert Keith LEVIN, Petitioner and Appellee,**

v.

**Hope M. CARLTON, Respondent and Appellant.**

No. 20080192–CA.

Court of Appeals of Utah.

June 25, 2009.

Kenneth A. Okazaki and Stephen C. Clark, Salt Lake City, for Appellant.

David S. Dolowitz, Bradley M. Strassberg, and Joshua K. Peterman, Salt Lake City, for Appellee.

Before Judges GREENWOOD, THORNE, and ORME.

OPINION

GREENWOOD, Presiding Judge:

¶ 1 Appellant Hope M. Carlton (Wife) appeals from the trial court's order granting

Robert Keith Levin's (Husband) petition for divorce, arguing that the court erred in (1) interpreting the parties' prenuptial agreement (the prenup) and in applying that interpretation to determine property division, alimony, and attorney fees; (2) denying Wife's discovery request regarding Husband's post-separation finances; (3) determining the amount of alimony to which Wife is entitled; and (4) awarding Husband attorney fees and denying Wife the same. We affirm.

## BACKGROUND [1]

¶ 2 Husband and Wife were married in 1991 in California. At the time of the marriage, Wife was a twenty-five-year-old aspiring actress who "had acted in some obscure films" and had sporadically appeared on television, making as much as $44,000 in one year. Husband, on the other hand, was at that time a forty-two-year-old semi-retired multi-millionaire. In an effort to "protect[ ] his present assets, future investments and future business activities, [Husband] insisted that the parties negotiate and enter into a prenuptial agreement." Husband and Wife each retained and were represented by independent counsel during negotiations resulting in the prenup. The parties both signed the prenup prior to the marriage. The prenup contained a provision stating that it "shall be subject to and interpreted under the laws of the State of California."

¶ 3 Shortly after marrying, Husband and Wife moved to Park City, Utah, "where they lived a luxurious leisure lifestyle" for nearly two years. In 1994, Husband purchased ranch property in Grand County, Utah using $800,000 of his personal assets. He and Wife moved to the ranch to develop it, with the hopes of transforming it into and operating it as a destination resort. Husband invested another $12,000,000 of his personal assets in pursuit of this development, and both parties worked to transform the ranch into the Sorrel River Ranch Resort (the Resort). Although this transformation process was rigorous, the parties also enjoyed numerous amenities as a result of living at the Resort.

¶ 4 In addition to investing in the Resort, Husband invested "in a limited liability company that developed lots on Flat Iron Mesa in San Juan County, Utah." Husband's investment in the Flat Iron Mesa development (Flat Iron) was structured so that he "received sixty per cent (60%) of the profits of the [LLC]." By the time all the lots were sold, Husband had received roughly $1,500,000 in profits therefrom, $1,000,000 of which was received prior to the parties' separation.

¶ 5 In 2005, Husband filed a petition for divorce. While litigating the divorce, Wife and Husband argued at length regarding the proper interpretation of the prenup as it affected division of their property. Wife based her claims for community property "first on her efforts to invalidate the [prenup], second on her claim that she was co-owner of the Resort, and third, that she was entitled to one-half of [Husband's] distributions from Flat Iron Mesa and one-half of the operation cash flow of the Resort." The prenup contained various provisions classifying separate and community property and delineating how to define and divide each. Of importance to this appeal, the prenup defined "earnings," and stated, in essence, that anything properly classified as earnings received by Husband was to be treated as community property and divided equally upon dissolution of the marriage.

¶ 6 The trial court ultimately sided with Husband, finding "that there was and is no community property." The trial court continued, stating that Wife's interpretation of the term "earnings"—and of the prenup in general—is "in conflict with the remainder of the [prenup] and [if accepted would] render it superfluous." The trial court also found "it hard to believe that [Husband] went to the trouble of obtaining such a comprehensive and detailed prenuptial agreement so that he could ensure that [Wife] could claim one-half of the profits from any business venture in which he would become involved."

¶ 7 The determination of alimony was expressly excluded from the prenup and was "reserved to the jurisdiction of the court." The trial court "reached its alimony award

1. We rely primarily on the trial court's findings of fact in setting forth the relevant background.

by looking at the documented historic expenditures," "find[ing] that the parties spent approximately $9,000.00 per month on [Wife]'s expenses before separation and after separation, [Wife] spent approximately $10,500.00 per month." Wife's expert testified that in order to allow Wife to continue to live the lifestyle she enjoyed during the parties' marriage, Wife reasonably needed $30,000 per month in alimony. Included in that total, among other things, was $6800 for Wife to purchase and pay the mortgage on a $1,000,000 home.[2] The trial court made extensive findings regarding the reasonableness of Wife's needs, finding that several of Wife's needs were exaggerated, unnecessary, or unreasonable. For example, the trial court found that the house in which Wife was then residing—which house was gifted to Wife prior to entry of the divorce decree—was "similar in appearance and quality to the residence in which she live[d] at the Resort. Accordingly, the Court reduce[d] [Wife's] proposed budget by $6,800.00 which is the monthly amount that [Wife] had included for the purchase of a new home." After analyzing each of Wife's claimed expenses, the trial court ultimately found "that [Wife] will require $12,000.00 per month after taxes to maintain her marital standard of living and thus found that she would need a monthly [gross alimony] payment of $15,000.00." Because the marriage lasted fourteen years and three months, the trial court set the presumptive duration of the alimony award at fourteen years and three months. In addition, the trial court abrogated the presumption that alimony terminates upon remarriage or cohabitation so that Wife could "make a gradual adjustment to a different lifestyle if she should decide to remarry, as well as [to provide] a cushion toward[ ] establishing a new career."

¶ 8 In order to allow Wife to litigate the interpretation of the prenup, the trial court had previously ordered Husband to pay $120,000 of Wife's attorney fees, advising her that it might later order her to reimburse Husband for the fee he advanced her. When entering the final decree, however, the trial court found that Husband "should not be required to pay any [of Wife's] further litigation expenses" above and beyond the $120,000 already advanced. Instead, the trial court ordered Wife to pay the remainder of her own attorney fees, at least $30,000 worth, out of "approximately $35,000 in a securities account that was gifted to her by [Husband] during the course of the marriage as well as the alimony that she will be receiving from [Husband]." The prenup also contained an attorney fees provision entitling the prevailing party with respect to interpretation of the prenup to recover any reasonable attorney fees expended in the course of litigating the prenup's interpretation. Because Husband prevailed as to the interpretation of the prenup, the trial court awarded Husband his attorney fees in the amount of $167,884.75, to be paid by Wife "by deducting $5,000 from each month's alimony payment ... until paid in full." With an eye toward mitigating the impact this payment would have on Wife's ability to otherwise meet her needs, the trial court subsequently reduced the amount Husband could deduct from Wife's alimony to $2500 per month. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 The first issue Wife raises is whether the trial court erred in interpreting the prenup and applying it to the facts of this case. "[Pre]nuptial agreements are to be construed and treated as are contracts in general. They are in no way different from any other ordinary contract." *Berman v. Berman,* 749 P.2d 1271, 1273 (Utah Ct.App. 1988) (citation and internal quotation marks omitted). We review a trial court's interpretation of an unambiguous contract for correctness. *See Green River Canal Co. v. Thayn,* 2003 UT 50, ¶ 16, 84 P.3d 1134.

¶ 10 Wife also argues that the trial court erred in denying her discovery requests regarding Husband's post-separation finances.

Although trial courts have broad discretion in matters of discovery, the trial court, in

---

2. Husband also submitted a budget of Wife's expenses for consideration. It appears that the trial court primarily considered Wife's budget, stating with respect to Husband's budget only that it "understates certain expenses and makes certain assumptions that the Court rejects."

exercising such discretion, must apply the correct law to its findings of fact, and its findings of fact must be supported by sufficient evidence. An appellate court will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling.

*Askew v. Hardman,* 918 P.2d 469, 472 (Utah 1996).

¶ 11 Next, Wife argues that the trial court erred in setting the amount of alimony to which she is entitled. " 'Trial courts have considerable discretion in determining alimony ... and [determinations of alimony] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated.' " *Davis v. Davis,* 2003 UT App 282, ¶ 7, 76 P.3d 716 (omission and alteration in original) (quoting *Breinholt v. Breinholt,* 905 P.2d 877, 879 (Utah Ct.App.1995)).

¶ 12 Finally, Wife contests the trial court's decision to award Husband attorney fees pursuant to the prenup and to deny her full attorney fees. The decision that a party is contractually entitled to attorney fees is reviewed for correctness, while the subsidiary factual determination of which party prevailed is reviewed for an abuse of discretion. *See Crowley v. Black,* 2007 UT App 245, ¶ 6, 167 P.3d 1087. In contrast, in divorce cases generally " '[t]he decision to grant or deny attorney fees is within the trial court's sound discretion.' " *Davis,* 2003 UT App 282, ¶ 9 (quoting *Shinkoskey v. Shinkoskey,* 2001 UT App 44, ¶ 5, 19 P.3d 1005).

## ANALYSIS

¶ 13 There is a common thread underlying all of Wife's arguments in this appeal: her contention that the trial court failed to properly exercise its equitable discretion to rule more generously in her favor. Wife relatedly contends that the trial court should have, but did not, state why it rejected the rationale she presented to justify the exercise of equitable discretion. We believe the record in this case reflects that the trial

court duly considered Wife's arguments regarding the application of equity, but in large part rejected those arguments, determining that they were not persuasive. That, in itself, was an exercise of discretion. Furthermore, we do not believe the trial court is required to state explicitly why it rejected the requests for equitable relief in a domestic matter, so long as the findings of fact and conclusions of law are adequately supported by the evidence and the law. With that in mind, we turn to the issues raised by Wife.

### I. Interpretation of the Prenup

¶ 14 Wife does not argue that the prenup is ambiguous; rather, she argues that the trial court erred in interpreting the unambiguous prenup as a matter of law. More specifically, Wife contends that the trial court erred (1) by narrowly and strictly construing the prenup, even though such an interpretation allegedly resulted in an inequitable property division and (2) in interpreting "earnings" as defined under the prenup. As with any other contract, when interpreting a prenup we "look[ ] first to the four corners of the agreement to determine the intentions of the parties." *Neilson v. Neilson,* 780 P.2d 1264, 1267 (Utah Ct.App.1989). Where the agreement is unambiguous on its face, we interpret it as a matter of law. *See id.* "In so doing, a court must attempt to construe the contract so as to 'harmonize and give effect to all of [its] provisions.' " *Dixon v. Pro Image, Inc.,* 1999 UT 89, ¶ 14, 987 P.2d 48 (alteration in original) (quoting *Nielsen v. O'Reilly,* 848 P.2d 664, 665 (Utah 1993)).

### A. General Interpretation

¶ 15 Wife argues that, under Utah law, "marital agreements are not to be construed and applied in the same fashion as arms-length commercial contracts." Wife cites *In re Estate of Beesley,* 883 P.2d 1343 (Utah 1994), for the proposition that "[p]arties to premarital agreements ... are held to the highest degree of good faith, honesty, and candor in connection with the negotiation and execution of such agreements."[3] *Id.* at

---

3. Wife also cites several Utah cases for the proposition that trial courts are not bound by the parties' stipulation as to property rights in a

divorce proceeding. However, the cases cited by Wife are inapposite because none of them involved premarital agreements and the stipulated

1346. While it is true that courts look closely for abuse at the time of execution of the prenuptial agreement in question, *see id.*, Utah law is equally clear that when it comes to interpreting and construing such agreements, they "are in no way [treated] different from any other contract." *Berman v. Berman*, 749 P.2d 1271, 1273 (Utah Ct.App.1988) (citation and internal quotation marks omitted). Wife concedes that she and Husband were independently represented by counsel during the negotiation and execution of the prenup and that the prenup is not void ab initio. Despite this, Wife argues that the trial court always "ha[s] a duty to ensure that the[ ] property division, alimony and attorney[ ] fees awards are fair and equitable to both parties." (Emphasis omitted.) We believe, however, that unfettered acceptance of this argument would vitiate the ability of parties to enter into meaningful and enforceable prenuptial agreements. While we recognize that trial courts always maintain discretion to make equitable adjustments to property division in divorce proceedings, *see* Utah Code Ann. § 30-3-5(1) (2007) (allowing courts to enter equitable orders in conjunction with divorce decrees); *cf. Reese v. Reese*, 1999 UT 75, ¶ 25, 984 P.2d 987 (noting that premarital contracts are generally valid "insofar as the negotiations are conducted in good faith ... and do not unreasonably constrain the court's equitable and statutory duties"), we do not believe, as Wife contends, that failure to exercise this discretion, alone, amounts to legal error. Accordingly, we uphold the trial court's general interpretation and construction of the prenup.[4]

property division in each was done in the course of the divorce proceedings, not prior to the marriage. *See, e.g., Colman v. Colman*, 743 P.2d 782 (Utah Ct.App.1987) (stating that, "in anticipation of divorce, the [parties] executed a written property settlement agreement" to resolve the dispute regarding the substantial property acquired during the marriage).

4. To the extent that we read Wife's arguments as a challenge to the validity of the prenup, we note that the trial court "determined on summary judgment [that the prenup] was valid and enforceable." The trial court further found that "[t]he evidence presented at trial reinforces th[at] determination."

### B. Interpretation of "Earnings"

¶ 16 Wife also argues that the trial court erred as a matter of law in interpreting the term "earnings" as included in the prenup. In particular, Wife argues that the trial court's interpretation was too restrictive, allowing Husband to deprive Wife of any interest to which she was otherwise entitled, or, in other words, "depriv[ing] Wife of the benefit of her bargain." Wife contends that it was error for the trial court to have failed to interpret earnings in a more broad and encompassing manner—i.e., as anything "given or received as an equivalent for services, debt, loss, injury, ..., etc."[5]

¶ 17 After extensively analyzing several provisions of the prenup, the trial court correctly noted that proper contract interpretation required the court "to read the [prenup] as a whole in order to ... harmonize its various provisions" and ensure that earnings are "interpreted in light of the [remaining] provisions of the [prenup]." The trial court then interpreted "earnings" to "mean[ ] payments based at least in theory on services, such as actual salary, guaranteed payments to a member in a limited liability company, or draws to a partner in an operating business partnership." In doing so, the trial court rejected Wife's broader interpretation, determining that Wife's position "would be in conflict with the remainder of the [prenup] and render it superfluous."

¶ 18 Section F of the prenup deals explicitly with when the property of each party will be classified as community property. Notably, this section begins with an express intention to modify California community property

5. Relatedly, Wife argues that the trial court erred in determining that Husband was merely a "passive investor" in Flat Iron such that his profits therefrom were not "earnings" under the prenup. In this regard, Wife argues at length that the trial court erred in determining that Flat Iron was not a business venture. However, the trial court based this conclusion not on the business venture argument raised by Wife on appeal, but on the "*find[ing]* that [Husband] had virtually no active involvement in Flat Iron." (Emphasis added.) Wife has not adequately challenged this finding on appeal. *See* Utah R.App. P. 24(a)(9) (stating that "[a] party challenging a fact finding must first marshal all record evidence that supports the challenged finding").

law, stating that "the parties acknowledge that all earnings or income resulting from the personal services, skills, efforts, talent, or work of the parties during the time that they are married and living together could be categorized as community property under California law," subject to equal division should the marriage dissolve. To this end, Section F states that all earnings shall remain personal property of the party earning them, except as otherwise provided in the prenup. The exceptions relevant to this argument are contained in the following provisions of Section F of the prenup:

2. ... the "earnings" or "base salary", or accumulations from such earnings or salary, derived from actual effort or employment of [Husband], from and after the date of marriage, shall be community property. For purposes of this paragraph, the terms "base salary" or "earnings" are defined as compensation for labor or services performed by [Husband], excluding pension and deferred contributions, stock, stock options, bonuses, benefits and rights, and perquisites, received by [Husband] from his employment, which items shall remain [Husband's] separate property.... In this regard, the .parties specifically acknowledge and agree that [Husband] is fully free during the course of the marriage to pursue any vocation, occupation or profession....

3. In the event [Husband] enters into any type of business venture or ventures from and after the date of marriage from which [Husband] will receive earnings or salary therefrom (regardless of whether such earnings or salary have been derived from actual effort or services performed by [Husband] for or on behalf of the business venture), such earnings or salary, or accumulations from such earnings or salary, derived from said business venture or ventures, shall be community property. For purposes of this paragraph ..., the term "earnings" or "salary" ... *excludes* pension and deferred income contributions, stock, stock options, bonuses, benefits and rights, and perquisites....

. . . .

9. In the event the parties enter into any type of joint business venture or ventures from and after the date of marriage, the earnings or salary, or accumulations from such earnings or salary, derived from said joint business venture or ventures, shall be community property. For purposes of this paragraph, the parties understand and agree that a joint business venture will be established where the parties have entered into a written agreement to establish same.[6]

¶ 19 Wife has failed to demonstrate any error by the trial court in interpreting these and other earnings-related provisions of the prenup. Although Husband received profits from his investment in Flat Iron and financial benefits from his work transforming the Resort, the trial court correctly determined that these were not "earnings" as defined above. Also, Wife has not shown that Husband's involvement in Flat Iron constituted "enter[ing into] a business venture" nor that Husband received earnings therefrom. Finally, there is no evidence that "the parties ... entered into a written agreement to establish [a joint business venture.]" Accordingly, we find no legal error in the trial court's interpretation of earnings as contained in the prenup or in its finding, based on this interpretation, "that there was and is no community property."

## II. Denial of Wife's Discovery Requests

¶ 20 In general, a trial court has broad discretion in making discovery rulings, so long as it "appl[ies] the correct law to its findings of fact, and its findings of fact [are] supported by sufficient evidence." *Askew v. Hardman*, 918 P.2d 469, 472 (Utah 1996). The prenup provided that it was to be interpreted according to California law. Section 771 of the California Family Code states: "The earnings and accumulations of a spouse ... while living separate and apart from the other spouse, are the separate property of the spouse." Cal. Fam.Code § 771(a) (Deer-

---

**6.** Relatedly, Section J(3) of the prenup states: "The expenditure of time, effort, skill and money by one party for the benefit of the separate property of the other party shall be deemed to be a gift to the other unless otherwise agreed to in writing."

ing 2008). The trial court interpreted this according to its plain meaning, so as to preclude—as a matter of law—any post-separation income from the definition of community property or property subject to division in the divorce. Though not directly contesting this interpretation, Wife argues that both California and Utah law allow deviation for equitable considerations. Even assuming that the trial court had discretion to consider post-separation earnings, we see no error in the trial court's denial of Wife's discovery requests because the trial court correctly determined that there were no such earnings.

### III. · Alimony Determination

¶ 21 Wife also objects to the alimony amount set by the trial court, arguing that it was inequitable in several respects. Wife argues that the trial court erred in basing her post-divorce needs on her standard of living at the Resort, as opposed to her more luxurious lifestyle in Park City. We believe the trial court's decision was within its allotted discretion because Wife's needs were reasonably based on her lifestyle at the Resort where the parties lived during most of their marriage—nearly twelve years—as opposed to only two years in Park City.

¶ 22 Wife's primary argument regarding alimony relates to the trial court's failure to exercise its equitable powers, claiming that the trial court "erred in failing to make a compensating adjustment in alimony . . . based on Wife's contributions to Husband's greatly increased earning capacity." In support, Wife cites Utah Code section 30-3-5(8)(a)(vii), see Utah Code Ann. § 30-3-5(8)(a)(vii) (2007) (mandating that, before setting an alimony amount, a trial court consider whether the spouse receiving alimony contributed to an increase in the other spouse's earning capacity by helping to put him or her through school). Section 30-3-5(8)(a)(vii) does not apply to the present facts, because there is no evidence that Husband attended school during the marriage, that Wife helped him through this schooling, or that it led to an increase in Husband's earning capacity. See id. Wife also cites Utah Code section 30-3-5(1) as justifying an increase in the

alimony she was awarded. Section 30-3-5(1) states: "When a decree of divorce is rendered, the court may include in it equitable orders relating to the . . . parties." Id. § 30-3-5(1). Wife argues that the trial court erred in failing to adjust her alimony award, especially in light of the trial court's attorney fees award. She also argues that her efforts in "rearing [the parties' child] and managing the parties' household" led to an increase in Husband's earning capacity, and that "Husband insisted that the parties separate just prior to his realization of substantial earnings" stemming from business ventures aided by Wife's contributions. The trial court made detailed findings regarding alimony and exercised its discretion in Wife's favor by extending alimony for a period of time regardless of whether she cohabits or remarries. Cf. id. § 30-3-5(9), (10) (stating that, as a general rule, alimony terminates when the receiving spouse cohabits or remarries). Wife has not challenged the evidentiary basis for the alimony award, and we see no "clear and prejudicial abuse of discretion" by the trial court. See Davis v. Davis, 2003 UT App 282, ¶ 7, 76 P.3d 716.

### IV. Attorney Fees

¶ 23 Finally, Wife claims error in the trial court's attorney fees rulings, arguing that the trial court erred both in awarding fees to Husband pursuant to the prenup and in denying fees to Wife. Wife also argues that the court abused its discretion by ordering that Husband's attorney fees be paid out of Wife's alimony. We examine these issues separately.

### A. Grant of Husband's Attorney Fees

¶ 24 Wife argues that the trial court erred in awarding Husband his attorney fees pursuant to the prenup's provision that, "In the event of a dispute between the parties arising out of the terms, conditions and obligations imposed by this [prenup], the prevailing party shall be entitled to recover reasonable attorney[ ] fees, costs and expenses incurred in connection therewith." Wife asserts that (1) the trial court strictly applied the prenup without considering its "primary obligation to do equity in divorce

matters," and (2) the "prevailing party" clause in the prenup violated public policy and was unconscionable.

¶ 25 First, we disagree with Wife's assertion that a trial court must "do equity" as its primary objective, where equity is directly contrary to the intention of the parties as evidenced by the plain language of a valid prenuptial agreement. In this case, the prenup "entitled [the party prevailing in a dispute involving interpretation of the prenup] to recover reasonable attorney fees, costs and expenses." This provision, which both parties participated equally in negotiating and executing, is in direct conflict with Wife's equitable request for attorney fees. Second, Wife has not shown that the attorney fees provision in the prenup violated public policy or was unconscionable.[7] Under Utah law, "prospective spouses may make binding contracts with each other and arrange their affairs as they see fit," *see Reese v. Reese,* 1999 UT 75, ¶ 25, 984 P.2d 987, so long as the contract is negotiated and executed in good faith, i.e., "there is no fraud, coercion, or material nondisclosure," *see In re Estate of Beesley,* 883 P.2d 1343, 1346–47 (Utah 1994). Wife concedes that both she and Husband were represented by independent counsel during the negotiation and drafting of the prenup. She does not argue that Husband acted fraudulently or coercively or that Husband failed to disclose any material information during that process. Thus, we can only review the correctness of the trial court's interpretation of this provision.

¶ 26 Because Wife has not adequately challenged the factual determination that Husband was the prevailing party with respect to interpretation of the prenup, *see Crowley v. Black,* 2007 UT App 245, ¶ 6, 167 P.3d 1087 (stating that which party prevailed is a factual determination); Utah R.App. P. 24(a)(9) (requiring an appellant who wishes to challenge a factual finding to marshal the evidence supporting that finding before attacking it), we assume that the trial court

was correct in determining that Husband was the prevailing party below, *see Moon v. Moon,* 1999 UT App 12, ¶ 24, 973 P.2d 431. Furthermore, Wife makes no meaningful argument that the trial court interpreted the prenup's prevailing party clause incorrectly as a matter of law, contending only that the trial court could have used its equitable powers to alter the attorney fees award if it had so chosen. In order to be valid, a premarital agreement must not "unreasonably constrain the court's equitable and statutory duties." *See Reese,* 1999 UT 75, ¶ 25. While the prenup's attorney fees provision certainly constrained the trial court's authority to award fees, we do not agree that this restraint was unreasonable. Moreover, the trial court did exercise its equitable authority in part, finding "that [Wife's] position was not so untenable that she should be required to cover all of her own fees." Although the trial court did not award Wife all of the attorney fees she incurred litigating the divorce, it recognized that it could have and simply chose not to, stating that to do so would be unfair to Husband.

## B. Denial of Wife's Attorney Fees

¶ 27 Wife also argues that the trial court erred in denying her request that Husband pay her attorney fees in full. Because Wife was not the prevailing party below, she is not entitled to attorney fees pursuant to the prenup. However, trial courts in divorce proceedings are granted discretion to award attorney fees where appropriate to enable each party to thoroughly prosecute or defend the divorce action. *See* Utah Code Ann. § 30–3–3(1) (Supp.2008); *Davis v. Davis,* 2003 UT App 282, ¶ 9, 76 P.3d 716. Such an award must be based "on evidence of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees." *See Davis,* 2003 UT App 282, ¶ 14.

¶ 28 The trial court ordered Husband to pay $120,000 in attorney fees incurred by Wife so that she could prosecute her claims

---

**7.** Wife's primary policy argument is that Utah law supports "giving both parties the chance to present their claims and defenses" in a divorce proceeding, such that the party with the most money does not have an unfair advantage. How-

ever, as will be discussed in Section IV(B) below, the trial court actually awarded Wife a significant portion of her attorney fees for precisely that purpose.

and defenses, but required Wife to pay any attorney fees above that amount. The trial court found that Wife had approximately $35,000 that had been gifted to her by Husband during the marriage. The trial court also found that Wife had the funds necessary to pay for these fees in light of this gift "as well as the alimony that she will be receiving from [Husband]." Because the remainder of Wife's fees, above the $120,000 paid by Husband, were uncertain at the time of the trial court's ruling, it ordered Wife "to use the funds in her security account along with her income, if needed, to cover at a minimum $30,000 of her own fees.... [A]nd, if [Wife's] litigation expenses [above the $120,000 already paid] are less than $30,000, [Husband] should be entitled to a refund of the difference."

¶ 29 The trial court further found that Husband had the ability to pay any attorney fees amount ordered, that the fees requested by Wife were reasonable, and that Wife needed the attorney fees. Wife implies that these findings alone entitle her to all of her fees, arguing that to hold otherwise, as the trial court did, forces her to spend her own money on her attorney fees, thus rendering her unable to meet her reasonable needs as found by the court. This argument fails to recognize that, by definition, discretion implies the exercise of or the refusal to exercise reasoned choice. *See* Black's Law Dictionary 479 (7th ed.1999) (defining "judicial discretion" as "a court's *power to act or not act* when a litigant is not entitled to demand the act as a matter of right" (emphasis added)). Simply because the trial court "may" have granted Wife her attorney fees does not require it to do so, so long as its decision thereon is reasonable and within its allotted authority.

## C. Payment of Husband's Attorney Fees

■■■ ¶ 30 Fully aware of Wife's financial status and in an effort to mitigate the impact that payment of Husband's fees would have on Wife's ability to care for herself, the trial court originally allowed Husband to "deduct[ ] $5,000.00 from each month's alimony payment" to Wife until the fees were paid in full. Subsequently, the trial court granted Wife's motion to amend "to the extent of decreasing the monthly payment of the awarded attorney fees that [Wife] should make to [Husband]" such that Husband could only deduct $2500, as opposed to $5000, per month from Wife's alimony award.

¶ 31 The trial court was presented with two irreconcilable and equally inequitable outcomes: (1) award Husband the attorney fees to which he is contractually entitled and force Wife to live temporarily on less money than she needs, or (2) deny Husband attorney fees under the prenup and award Wife her attorney fees so that she may meet her needs and, in doing so, allow her to avoid the explicit consequences of the bargain she made. The trial court recognized this tension, stating that denying Wife a portion of her fees

> will mean that [Wife] will not receive enough money to maintain her at the standard of living she enjoyed during the marriage. She will naturally have to curtail her living standard, but will still be able to maintain a comfortable lifestyle. This temporary curtailment is the natural consequence of her decision to pursue a claim for community property when the clear intention of the [prenup] she signed ... was to sharply limit the creation of community property. That same agreement requires the prevailing party in a dispute over the effect of the agreement recovers attorney fees. To increase alimony so [Wife] can pay those fees would make that portion of the agreement meaningless.

Based on the discretion afforded the trial court in awarding attorney fees and the trial court's detailed reasoning as to its decision in this case, we cannot say that the trial court abused its discretion in its orders regarding attorney fees. *See Davis*, 2003 UT App 282, ¶ 9.

## CONCLUSION

¶ 32 Wife has failed to show that the trial court erred as a matter of law in interpreting the prenup or in denying her discovery requests. In addition, Wife has failed to show error as a matter of law or an abuse of discretion in either the trial court's alimony or attorney fees determinations. And, be-

cause Husband has prevailed on appeal, as below, he is entitled to his reasonable attorney fees incurred on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998). We remand for determination of the amount of such an award. The judgment is otherwise affirmed.[8]

¶ 33 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, and GREGORY K. ORME, Judge.

8. Husband filed a motion to strike Wife's reply brief submitted on appeal. We hereby deny Husband's motion to strike.