2011 UT App 161

**Veronica Lee JACOBSEN, Petitioner and Appellant,**

v.

**Guenther JACOBSEN, Respondent and Appellee.**

**No. 20080802–CA.**

Court of Appeals of Utah.

May 19, 2011.

David S. Pace, Salt Lake City, for Appellant.

Terry R. Spencer and Jeff D. Rifleman, Sandy, for Appellee.

Before Judges THORNE, VOROS, and CHRISTIANSEN.

## OPINION

CHRISTIANSEN, Judge:

¶1 Petitioner Veronica Lee Jacobsen (Wife) appeals several aspects of the trial court's order and decree of divorce. Wife argues, among other things, that the trial court erred in determining that the parties' postmarital agreement was valid and enforceable. We affirm.

## BACKGROUND

### I. The Divorce Agreement

¶2 Wife and Respondent Guenther Jacobsen (Husband) married in April 1997 and began contemplating a divorce in February 2001. At that time, Wife started, but did not complete, online divorce forms. Subsequently, Wife drafted a "Divorce Agreement" (the Agreement), and after negotiating Husband's proposed changes, the parties executed the Agreement in May 2001.

¶3 With regard to the parties' residence, the Agreement provided that the following would occur upon filing the divorce petition: (1) Wife's name would be removed from the mortgage but would remain on the title; (2) Husband would be responsible for making payments on the mortgage through the end of August 2004 and, after August 2004, the parties would share these payments "in the ratio of actual gross income"; (3) Wife would be responsible for making the utility and maintenance payments; (4) the parties would equally share the cost of any repairs, except that each would be responsible for damages he or she caused; (5) the parties would list the property for sale in May 2004, at the earliest, and the closing would not take place until after August 31, 2004; (6) "[i]n the case of sale of the property," the equity would be equally divided between the parties, or "[i]n

the case of pay-out on September 1, 2004[, e]quity [would] be calculated based on property sale listing price (minus closing cost[s] ) at that time or $70K, whichever the greater amount[, would] be paid out to [Wife] by [Husband]"; (7) Wife and her son [1] could continue living in the residence until the end of August 2004; and (8) after August 2004, Wife could live there "until the property sale [was] finalized or the pay out [was] completed."

¶4 In addition, the Agreement provided that the parties would jointly file tax returns and "divid[e any refund] equally." The parties also agreed to equally divide the 401(k) and any pension plans held in either party's name "for the duration of the marriage." Finally, Wife agreed that she would not seek alimony. The trial court expressly noted that the Agreement was "a partial stipulation regarding the disposition of most, but not all, of the parties' assets." In particular, "[t]he Agreement was silent as to disposition of personalty, including stock options accruing during the parties' marriage."

¶5 After the Agreement was executed in 2001, Husband made the mortgage payments, and paid the taxes and insurance on the residence, without contribution from Wife. Husband paid the mortgage in full in June 2005 with his bonuses, incentive pay, and an inheritance. Although Husband removed Wife's name from the mortgage, it remained on the title to the residence until the residence was sold in August 2006.

### II. Bank Accounts

¶6 In May 2001, the parties began spending extended time in separate households. The parties also separated their joint bank accounts in May 2001, splitting the funds equally between them. Wife set up new bank accounts solely in her name and named Husband as a signatory on a Utah bank account. Husband retained the joint bank account as his own even though he did not remove Wife's name from the account. With only two exceptions, the parties deposited their respective paychecks into their separate

---

1. Wife has a son from outside of this marriage.

bank accounts and withdrew from them exclusively.[2] Husband deposited all of his salary into his bank account. He also deposited his inheritance, worth approximately $45,000, into that bank account.

¶ 7 In January 2003, Wife moved to Hong Kong for approximately two and one-half years. While there, she deposited her salary and living allowance into her separate bank accounts, to which Husband did not have access. Husband still had access to one of Wife's bank accounts, which he accessed only to make payments on Wife's credit card account and to pay Wife's son's expenses while she was in Hong Kong.

### III. The Residence

¶ 8 Wife lived in the residence with her son before she left for Hong Kong and moved back into the residence upon her return. Husband lived in the residence with Wife's son while Wife was in Hong Kong. The parties sold the residence in August 2006 and placed the proceeds in escrow, where they remained until February 2009 when the trial court granted Husband's motion to enforce the decree of divorce (the Decree) and denied Wife's motion to stay its enforcement.

### IV. Divorce Proceedings

¶ 9 Wife filed a divorce petition on October 13, 2005. A bench trial was held on January 31, 2007, and the trial court orally announced its findings of fact and conclusions of law on February 5, 2007, directing Husband's counsel to prepare the written findings of fact and conclusions of law. After significant delays on the part of both parties, the trial court prepared the findings of fact and conclusions of law itself and entered them on June 19, 2008. The Decree was entered on August 26, 2008. Wife filed several post–Decree motions, all of which the trial court denied, and filed a timely notice of appeal.

### ISSUES AND STANDARDS OF REVIEW

¶ 10 Wife first argues that the trial court erred in concluding that the Agreement was valid and binding. She contends that there was no meeting of the minds and that a condition precedent failed.

> Whether the parties had a meeting of the minds sufficient to create "a binding contract is ... an issue of fact," which "[w]e review ... for clear error, reversing only where the finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made."

*LD III, LLC v. BBRD, LC,* 2009 UT App 301, ¶ 13, 221 P.3d 867 (alteration and omissions in original) (quoting *O'Hara v. Hall,* 628 P.2d 1289, 1291 (Utah 1981)).

¶ 11 Even though Wife purports to challenge only the trial court's legal conclusion that there was "a meeting of the minds sufficient to create a binding [Agreement]," *see id.* (internal quotation marks omitted), such a determination is factually sensitive, *see Chen v. Stewart,* 2004 UT 82, ¶ 20, 100 P.3d 1177 ("Even where the defendants purport to challenge only the legal ruling, ... if a determination of the correctness of a court's application of a legal standard is extremely fact-sensitive, the defendants also have a duty to marshal the evidence."); *In re Beesley,* 883 P.2d 1343, 1347–48 (Utah 1994) ("The legal standard in the present case—the 'materiality' of [the husband's failure] to disclose his financial status prior to executing a premarital agreement—is extremely fact sensitive, and reviewing courts should therefore give trial courts considerable discretion in determining whether the facts of a particular case come within this established rule of law."). Thus, Wife must marshal the evidence supporting the trial court's conclusion that the parties had a meeting of the minds. *See* Utah R.App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged find-

---

**2.** One exception is that Wife periodically deposited her paycheck from Hong Kong into one of her bank accounts, from which Husband would withdraw funds to make payments on her credit card account and to cover her son's tuition and other expenses. Wife also withdrew funds from Hus-

band's bank account for her personal benefit, which funds the trial court found were improperly taken from Husband. The trial court thus ordered Wife to reimburse Husband from her portion of the equity from the residence. Wife does not challenge that ruling on appeal.

ing."); *Chen,* 2004 UT 82, ¶ 20, 100 P.3d 1177; *Beesley,* 883 P.2d at 1347–48.

¶ 12 On the other hand, we review the issue of whether a condition precedent failed as we would any issue of contract interpretation not requiring our resort to extrinsic evidence, i.e., as "matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness." *Foster v. Montgomery,* 2003 UT App 405, ¶ 11, 82 P.3d 191 (internal quotation marks omitted), *cert. denied,* 90 P.3d 1041 (Utah 2004).

¶ 13 Next, Wife asserts that if we conclude that the Agreement is enforceable, we should determine that the trial court erred in its subsequent distribution of the proceeds from the sale of the residence, including crediting Husband for using separate funds to retire the mortgage. "The governing principle in our law is that contracts between spouses are enforceable and 'generally subject to ordinary contract principles' so long as they are negotiated 'in good faith . . . and do not unreasonably constrain the [divorce] court's equitable and statutory duties.' " *Ashby v. Ashby,* 2010 UT 7, ¶ 21, 227 P.3d 246 (alteration and omission in original) (citations omitted). Accordingly, "[w]e review a trial court's interpretation of an unambiguous contract for correctness." *Levin v. Carlton,* 2009 UT App 170, ¶ 9, 213 P.3d 884.

¶ 14 However, the trial court may exercise its considerable discretion in deciding an issue related to the distribution of property that the parties did not consider in the Agreement. *See* Utah Code Ann. § 30–3–5(1) (2007) (allowing the trial court to equitably distribute the divorcing parties' property); *Elman v. Elman,* 2002 UT App 83, ¶ 17, 45 P.3d 176 (" 'A trial court has considerable discretion concerning property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity.' " (alteration in original) (citation omitted)). "We disturb a trial court's property division and valuation 'only

when there is a misunderstanding or misapplication of the law resulting in substantial and prejudicial error, the evidence clearly preponderates against the findings, or such a serious inequity has resulted as to manifest a clear abuse of discretion.' " *Elman,* 2002 UT App 83, ¶ 17, 45 P.3d 176 (citation omitted). To the extent that Wife argues that Husband's inheritance is marital property, "we review the trial court's legal conclusions concerning the nature of property for correctness." *Bradford v. Bradford,* 1999 UT App 373, ¶ 11, 993 P.2d 887, *cert. denied,* 4 P.3d 1289 (Utah 2000).

¶ 15 Wife next challenges the adequacy of the trial court's findings of fact related to awarding Husband the interest on the escrowed funds. "We review the legal adequacy of findings of fact for correctness as a question of law." *Jensen v. Jensen,* 2009 UT App 1, ¶ 6, 203 P.3d 1020.

¶ 16 Wife also challenges the sufficiency of the evidence to support the trial court's finding of fact regarding the date the parties separated their finances. "A challenge to the sufficiency of the evidence concerns the trial court's findings of fact. Those findings will not be disturbed unless they are clearly erroneous." *Kimball v. Kimball,* 2009 UT App 233, ¶ 14, 217 P.3d 733 (internal quotation marks omitted).

¶ 17 Finally, Wife challenges the amount of the trial court's award of attorney fees, and she seeks attorney fees on appeal. "Both the decision to award attorney fees and the amount of such fees are within the trial court's sound discretion." *Stonehocker v. Stonehocker,* 2008 UT App 11, ¶ 10, 176 P.3d 476 (internal quotation marks omitted). And, "[i]n divorce actions where the trial court has awarded attorney fees and the receiving spouse [prevails] on the main issues, we generally award fees on appeal." *Id.* ¶ 11 (second alteration in original) (internal quotation marks omitted).[3]

---

**3.** Wife also filed a motion to strike those portions of Husband's brief referencing post–Decree motions and orders. We deny Wife's motion and consider all parts of the record, including the post–Decree motions and orders. *See generally*

Utah R.App. P. 11(d)(2) ("Unless otherwise directed by the appellate court upon sua sponte motion or motion of a party, the clerk of the trial court shall include all of the papers in a civil case as part of the record on appeal.").

## ANALYSIS

### I. Enforcement of the Divorce Agreement

¶ 18 Wife argues that the trial court erred when it determined that the Agreement was enforceable because it satisfied the contract requirements of a meeting of the minds and did not contain conditions precedent. Specifically, Wife contends that the Agreement is invalid because (1) it either was negotiated in bad faith or " 'unreasonably constrain[ed] the [trial] court's equitable and statutory duties,' " *Ashby v. Ashby*, 2010 UT 7, ¶ 21, 227 P.3d 246 (quoting *Reese v. Reese*, 1999 UT 75, ¶ 25, 984 P.2d 987); (2) there was no meeting of the minds in that neither party was contemplating divorce at the time they executed it; and (3) the parties failed to meet a certain condition precedent.[4]

¶ 19 We decline to address Wife's arguments that Husband negotiated the Agreement in bad faith and that the Agreement unreasonably constrained the trial court in performing its equitable and statutory responsibilities, *see id*, because Wife fails to cite to the record identifying where she preserved these arguments, *see* Utah R.App. P. 24(a)(5)(A) ("The brief of an appellant shall contain ... citation to the record showing that the issue was preserved in the trial court...."); *Florez v. Schindler Elevator Corp.*, 2010 UT App 254, ¶ 32, 240 P.3d 107 (refusing to consider an issue because appellant "failed to establish that [it] was preserved").

¶ 20 Wife included record cites to Husband's trial testimony where he indicated that he did not discuss his inheritance with Wife before they entered into the Agreement. However, these record cites do not show that Wife properly raised this issue

below and our review of the record does not reveal that she preserved it. *See* Utah R.App. P. 24(a)(5)(A); *Hatch v. Davis*, 2004 UT App 378, ¶ 56, 102 P.3d 774 ("An issue is properly raised in the trial court if: (1) the issue is raised in a timely fashion; (2) the issue is specifically raised; and (3) the issue is supported by evidence or relevant legal authority."), *aff'd in part, rev'd in part on other grounds*, 2006 UT 44, 147 P.3d 383. Further, Wife's conclusory statement that the trial court's equitable powers were constrained "fails to offer any meaningful analysis," *see State v. Garner*, 2002 UT App 234, ¶ 12, 52 P.3d 467, and thus fails to conform to rule 24(a)(9), *see* Utah R.App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented...."). [5]

### A. Meeting of the Minds

¶ 21 Wife argues that she and Husband had no meeting of the minds because they were not contemplating a divorce at the time they executed the Agreement. The trial court specifically determined that "the parties generated the Agreement in contemplation of a divorce" based on its finding that the parties were having marital difficulties before signing the Agreement, as evidenced by Wife partially completing an online divorce petition. Wife acknowledges that "the ... Agreement was in contemplation of th[e] potential filing" of the online divorce petition she had filled out. Wife also recites evidence that supports the trial court's finding that the parties were having marital problems. However, even though Wife marshals much of the supportive evidence regarding the parties' marital problems, she fails to "show the 'fatal flaw' in that supportive evidence and

---

4. Wife also argues that the trial court erred when it construed the Agreement in Husband's favor, and against her, as the drafter. Although the trial court stated that it construed the Agreement in Husband's favor, it did not specifically refer to any ambiguity that favored Husband, and Wife acknowledges in her brief that the Agreement is unambiguous. In addition, Wife did not point to any ambiguity that caused the trial court to favor Husband. We need not resolve this point because it has no bearing on the issues Wife raises on appeal.

5. Husband alleges that Wife failed to marshal the evidence concerning this issue and nearly every one of her issues on appeal. Although Wife has not fully complied with other aspects of rule 24 of the Utah Rules of Appellate Procedure, we believe she has, except where noted herein, marshaled the evidence substantially enough for us to determine, where appropriate, whether the trial court's findings are clearly erroneous. *See generally In re S.L.*, 1999 UT App 390, ¶ 23, 995 P.2d 17 (addressing the substance of the appellant's arguments where she substantially complied with her marshaling obligation).

explain why the evidence is legally insufficient to support the finding," *see Kimball v. Kimball*, 2009 UT App 233, ¶ 20 n. 5, 217 P.3d 733 (citation omitted).

¶ 22 In any event, we are not convinced that, as Wife asserts, she and Husband had to have been contemplating an immediate divorce to reach a meeting of the minds as to the terms of the Agreement, which is essentially a postmarital agreement. It is self-evident that premarital or postmarital agreements are typically executed to resolve issues in the event of, rather than on the brink of, a divorce.[6] Although the trial court found that the parties entered into the Agreement in contemplation of a divorce, it also correctly determined that "the fact that the parties did not timely follow-through with the ... divorce ... d[id] not diminish the [c]ourt's conclusion that it [was] an enforceable contract" based on "more than adequate evidence ... that the parties knowingly negotiated [and] intend[ed] to be bound" by the Agreement.

## B. Condition Precedent

¶ 23 Wife also challenges the trial court's conclusion of law that "there were no failed conditions precedent to the enforceability of the Agreement." The Agreement states that the parties would place the residence on the market in May 2004, at the earliest, and that the sale "shall take place after August 31st, 2004." The Agreement also provided that equity in the home would be equally divided in one of two ways:

> 3.1. In the case of sale of the property: Equity will be divided equally upon property sale closure.
>
> 3.2. In the case of pay-out on September 1st, 2004: Equity will be calculated based on property sale listing price (minus closing cost) at that time or $70K, whichever the greater amount[,] will be paid out to [Wife] by [Husband].

¶ 24 Wife argues that she received neither a payout nor equal distribution of the equity after the sale of the residence, thereby creating an unsatisfied condition precedent to enforcing the Agreement. In other words, because Husband did not pay Wife out pursuant to paragraph 3.2, paragraph 3.1 was implicated, and Husband owed and yet failed to pay Wife one-half of the equity of the residence upon its sale.

¶ 25 " 'Condition precedent' is defined as 'an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.' " *McBride–Williams v. Huard*, 2004 UT 21, ¶ 13, 94 P.3d 175 (quoting *Black's Law Dictionary* 289 (7th ed. 1999)). The Agreement did not provide that the residence would be sold by a certain date, but rather that whenever it was sold, as long as the payout option was not exercised by September 1, 2004, the parties would equally share the equity. After the residence sold in August 2006, the proceeds were placed in escrow pending resolution of the parties' divorce. Based on the unambiguous terms of the Agreement, the trial court did not err in concluding that there were no conditions precedent. *See generally Foster v. Montgomery*, 2003 UT App 405, ¶ 11, 82 P.3d 191 (applying correctness standard to the question of whether there was a failed condition precedent in an unambiguous contract), *cert. denied*, 90 P.3d 1041 (Utah 2004).

## II. Distribution of Equity from the Residence

¶ 26 Having upheld the trial court's determination that the Agreement was enforceable, we now turn to Wife's arguments that the trial court erred when it credited Husband for retiring the mortgage with his separate funds and when it awarded him the interest paid on the funds deposited in the escrow account.

---

**6.** In contrast, parties that enter into a stipulated divorce decree or a property settlement agreement necessarily do so in contemplation of a divorce because divorce proceedings have been initiated by the filing of a petition for divorce. *See generally Sweet v. Sweet*, 2006 UT App 216, ¶ 3 & n. 1, 138 P.3d 63 (mem.) (finding a stipulated divorce decree to be "sufficiently similar" to a premarital agreement for the purpose of analyzing the principle that " 'agreements concerning the disposition of property owned by the parties at the time of their marriage are valid, so long as there is no fraud, coercion, or material nondisclosure.' " *Id.* ¶ 3 (quoting *Reese v. Reese*, 1999 UT 75, ¶ 24, 984 P.2d 987)).

A. Credit to Husband for Retiring the Mortgage

¶ 27 Wife challenges the trial court's decision to offset her fifty percent share of the equity from the residence by the amount Husband paid to retire the mortgage. She argues that under the Agreement's plain language, her name would remain on the title of the residence, Husband would make all of the mortgage payments until at least August 2004, she would not be responsible for the mortgage because her name was taken off the loan, and the equity would be evenly divided between her and Husband upon the sale of the residence. She contends that because the residence did not sell in 2004, the funds Husband used to retire the mortgage in June 2005 constituted a gift to the marital estate, became commingled with the marital estate, and thus should not be considered as an offset to the evenly-divided equity.[7]

¶ 28 The Agreement's plain language provides neither for the mortgage being retired nor for the distribution of inherited property. As a result, the trial court distributed the property according to equitable principles and its statutory powers under Utah Code section 30–3–5. *See* Utah Code Ann. § 30–3–5(1) (2007) ("When a decree of divorce is rendered, the court may include in it equitable orders relating to the children, property, debts or obligations, and parties."). *See generally Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 13, 176 P.3d 476 ("[T]he primary purpose of a property division ... is to achieve a fair, just, and equitable result between the parties." (alteration in original) (internal quotation marks omitted)).

¶ 29 When "making a property distribution, the trial court considers and must make findings on several issues. First, the court must identify the property in dispute and determine whether each item is marital or separate property." *Stonehocker*, 2008 UT App 11, ¶ 15, 176 P.3d 476. "In Utah, marital property is ordinarily divided equally between the divorcing spouses and separate property, which may include premarital assets, inheritances, or similar assets, will be awarded to the acquiring spouse." *Id.* ¶ 13 (internal quotation marks omitted).

¶ 30 The residence did not sell until August 2006. Husband made the mortgage payments from the time the parties entered into the Agreement in May 2001 until he retired the mortgage in June 2005. Wife did not make mortgage payments at any time after the parties executed the Agreement. The trial court found that Husband inherited approximately $45,000 after the parties separated and that it was his separate property. The trial court concluded that Husband should receive greater than fifty percent of the escrowed funds, which totaled $488,949, as credit for contributing his inheritance, bonuses, and incentive pay to retire the mortgage, and accordingly credited him with $237,657 before equally dividing the remaining funds.

¶ 31 The trial court correctly determined that Husband's $45,000 inheritance was his separate property—notably *not* finding that Husband's inheritance lost its identity and became commingled when he used it to pay down the mortgage. *See generally Mortensen v. Mortensen*, 760 P.2d 304, 307 (Utah 1988) ("The rule that property acquired by gift or inheritance by one spouse should be awarded to that spouse ... does not apply ... when the property completely loses its identity and is not traceable because it is commingled with other property ...." (citation omitted)). Rather, Husband deposited his inheritance into his separate bank account where it remained until he used it to retire the mortgage. Similarly, Husband's bonuses and incentive pay, which were used to retire the mortgage, were not commingled into the marital estate because after May 2001 Husband and Wife each maintained sep-

---

7. Wife also argues that the trial court failed to consider her contributions in improving and caring for the residence. We decline to address Wife's argument because her brief did not provide reasoning or citations for this issue as required under rule 24(a)(9) of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on.").

arate bank accounts to manage their respective incomes and expenses.[8]

¶ 32 Wife has not established that the trial court erred in determining that Husband's act of retiring the mortgage on the jointly-titled residence with his separate funds was not a gift to the marital estate. *See generally Jackson v. Jackson,* 617 P.2d 338, 340 (Utah 1980) ("The state of title to marital property prior to a divorce decree is not necessarily binding on the trial court in its distribution of such property pursuant to such decree."); *cf. Mortensen,* 760 P.2d at 307 ("The rule that property acquired by gift or inheritance by one spouse should be awarded to that spouse ... does not apply ... when the acquiring spouse places title in their joint names in such a manner as to evidence an intent to make it marital property." (citations omitted)); *Bradford v. Bradford,* 1999 UT App 373, ¶ 22, 993 P.2d 887 ("A transfer of otherwise separate property to a joint tenancy with the grantor's spouse is generally presumed to be a gift and, when coupled with an evident intent to do so, effectively changes the nature of that property to marital property." (citations omitted)), *cert. denied,* 4 P.3d 1289 (Utah 2000). The evidence supports the trial court's findings that the parties intended to separate their finances and households in May 2001, when they equally divided the money they had in their joint bank account. After that, Husband and Wife deposited their own incomes into their separate bank accounts, indicating that they intended to keep their funds separate. It follows that Husband did not intend his decision to retire the mortgage with his separate funds to be a gift to the marital estate. We determine, therefore, that the trial court did not err in finding that Husband's inheritance, bonuses, and incentive pay, which he used to retire the mortgage, should be credited to Husband.

## B.   Interest Paid on Escrow Funds

¶ 33 Wife contends that the trial court erred when it awarded Husband interest paid on the funds deposited into escrow from the residence sale in August 2006. These funds remained in escrow until at least February 2009, when the court granted Husband's motion to enforce the judgment and denied Wife's motion to stay the enforcement. On appeal, Wife argues that the trial court's findings of fact do not support its conclusion that "the party claiming the interest on the escrow account shall be awarded any interest which accrued on the escrowed sales proceeds."[9]

¶ 34 Wife again does not indicate where in the record she preserved her argument. *See* Utah R.App. P. 24(a)(5)(A). Nor does our review of the record, including post–Decree motions, reveal that she adequately preserved this issue for appeal by objecting to the trial court's findings. "[A] plaintiff 'waive[s] any argument regarding whether the district court's findings of fact were sufficiently detailed' when the plaintiff fails to challenge the detail, or adequacy, of the findings with the district court." *In re K.F.,* 2009 UT 4, ¶ 6, 201 P.3d 985 (quoting *438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 56, 99 P.3d 801).

¶ 35 In her first rule 59 motion, Wife challenged only the trial court's separation of the joint bank accounts. The trial court denied that motion, determining that she failed to state an adequate basis for relief under rule 59. *See generally* Utah R. Civ. P. 59. In her second rule 59 motion, also premised on rule 60(b), Wife's proposition that "[n]either the court's oral ruling nor findings of fact and conclusions of law address[ ] the interest accumulated on the escrowed amounts from the sale of the parties['] residence" was devoid of any analysis. The trial court denied

8.   Wife does not raise the more limited issue of whether Husband's income, including bonuses or incentive pay, during the parties' separation, is separate or marital property, and thus we do not consider it. *See generally Keiter v. Keiter,* 2010 UT App 169, ¶ 19, 235 P.3d 782 ("[E]arned income from employment or from rendering professional services during a marriage falls within the usual definition of marital property.").

9.   In this section of her brief, Wife also argues that pursuant to the Agreement she is entitled to one-half of the interest on the proceeds in the escrow account. As she essentially reargues the equity-credit issue, we do not address this argument again.

the second rule 59 motion because it was untimely under rule 59 and because Wife did not clearly state grounds for relief under rule 60(b). *See generally id.* R. 59, 60(b). Thus, we conclude that Wife failed to adequately preserve her argument before the trial court because the motion was untimely and lacked relevant legal authority to support her argument.

### III. Distribution of Other Assets

#### A. Bank Accounts

¶ 36 Next, Wife argues that the trial court's findings of fact concerning the date the parties separated their bank accounts conflict with the evidence produced at trial that the bank accounts contained marital funds, largely because the parties remained signatories on each other's bank accounts. The trial court found that the parties separated their bank accounts on or about May 2001, evenly splitting the funds from the joint account and setting up separate bank accounts.[10] The trial court also found that although the parties retained signatory rights on each other's bank accounts, it was due either to inadvertence or for convenience and did not evince their intent to retain an interest in one another's separate bank account.

¶ 37 The trial court's factual determinations were based on ample evidence and are therefore not clearly erroneous. *See generally Kimball v. Kimball*, 2009 UT App 233, ¶ 14, 217 P.3d 733. Husband testified that the parties evenly divided the funds in the joint bank accounts in the spring of 2001 and each took care of their own obligations with their own income from their separate bank accounts. Wife conceded that they each had separate bank accounts beginning in May 2001. After Wife moved to Hong Kong, she opened two bank accounts and maintained another bank account solely in her name. Wife testified that while in Hong Kong, she deposited all of her paychecks into her own

bank accounts. She also testified that Husband accessed her Utah bank account while she was in Hong Kong to withdraw funds to reimburse himself for covering her son's expenses. When she returned to Utah, Wife testified that she lived on her Hong Kong savings, which she did not share with Husband. Although there is some evidence to support Wife's contention that the bank accounts were not truly separate in 2001, the clear weight of the evidence supports the trial court's finding that the parties separated their finances in the spring of 2001.

#### B. Property Values

¶ 38 Wife contends that the trial court erred by using 2000 values for miscellaneous personal property instead of the 2007 values presented at trial. She also complains that the court failed to use Wife's updated financial declaration, which indicated that the parties' Volkswagen Golf actually had a lower value than the trial court used.[11]

¶ 39 " 'Generally, the marital estate is valued at the time of the divorce decree or trial.' " *Andrus v. Andrus*, 2007 UT App 291, ¶ 12, 169 P.3d 754 (quoting *Shepherd v. Shepherd*, 876 P.2d 429, 432 (Utah Ct.App. 1994)). And " 'if the trial court uses a date other than the date of the divorce decree, it must support its decision with sufficiently detailed findings of fact explaining its deviation from the general rule.' " *Id.* (quoting *Shepherd*, 876 P.2d at 433). The trial court clearly explained its rationale for not using the 2007 values and, thus, did not abuse its discretion. The trial court's findings explain that the only evidence to support the value of the various personal property items—a washer, a dryer, a television, and a dining room set—was the purchase price. Neither party presented evidence supporting the 2007 values.

---

**10.** In actuality, Husband retained the formerly "joint" bank account as his own separate account.

**11.** In her reply brief, Wife also argues that the trial court erred by not valuing the marital estate as of the time of the entry of the Decree. *See*

*generally Andrus v. Andrus*, 2007 UT App 291, ¶ 12, 169 P.3d 754. Wife again fails to include record citations to where she argued this issue before the trial court. *See* Utah R.App. P. 24(a)(5)(A). We thus decline to consider this argument.

## IV. Attorney Fees

¶ 40 Wife requests that we reassess the trial court's award of attorney fees in the amount of $2500. We determine that the trial court was well within its discretion when it awarded Wife $2500. *See Stonehocker v. Stonehocker,* 2008 UT App 11, ¶ 10, 176 P.3d 476. Wife also seeks attorney fees on appeal, but because she has not substantially prevailed on appeal, we deny her request. *See Osguthorpe v. Osguthorpe,* 872 P.2d 1057, 1059 (Utah Ct.App.1994) ("Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." (internal quotation marks omitted)), *cert. denied,* 883 P.2d 1359 (Utah 1994).

## CONCLUSION

¶ 41 We conclude that the trial court correctly enforced the parties' Agreement, given that they reached a meeting of the minds on the terms therein and that there were no conditions precedent. The trial court correctly determined that Husband was entitled to a credit for the amount of his own separate funds that he used to retire the mortgage. We also conclude that Wife did not preserve her argument that the trial court erred when it awarded Husband interest on the escrow account. The clear weight of the evidence supports the trial court's finding that the parties separated their finances in the spring of 2001. There was sufficient evidence supporting, and we thus affirm, the trial court's decision to use 2000 property values on the household items and the vehicle. Finally, we deny Wife's request for additional attorney fees at the trial court level and deny her request for attorney fees on appeal.

¶ 42 Affirmed.

¶ 43 WE CONCUR: WILLIAM A. THORNE JR. and J. FREDERIC VOROS JR., Judges.