**James F. SHEPHERD, Plaintiff and Appellant,**

v.

**Gail SHEPHERD, Defendant and Appellee.**

No. 920789–CA.

Court of Appeals of Utah.

June 3, 1994.

Rehearing Denied June 24, 1994.

James F. Shepherd (argued), appellant, pro se.

Frederick N. Green (argued), and Susan C. Bradford, Green & Berry, Salt Lake City, for appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BENCH, Judge:

Plaintiff, James F. Shepherd, appeals from the trial court's property distribution in the parties' divorce proceedings. We affirm.

## FACTS

The parties were married on September 30, 1978. Prior to their marriage, the parties executed a prenuptial agreement. The agreement provided, in pertinent part, that each party waived any interest in the other party's property brought into the marriage for five years from the date of marriage. The agreement provided, however, that in the event the parties resided in defendant's premarital home for a period exceeding six months after their marriage, title to the property would be conveyed to them as tenants-in-common. This conveyance would be subject to a lien in favor of defendant in the amount equal to the fair market value of the property, less encumbrances, at the time of the conveyance. Although the parties resided in defendant's premarital home throughout their marriage, no conveyance of title was ever made. The agreement also required each party to waive any interest or claim to any gift, devise, bequest, or inheritance received by the other party during the first five years of marriage. After the first five years of marriage, each party was to become vested with one-quarter interest in the premarital property of the other party, as well as any gift, devise, bequest, or inheritance received by the other party. The

agreement further provided that after ten years of marriage, each party's interest in the other's separate property was to increase from one-quarter to one-half.

Plaintiff's mother died in May 1989. Her last will and testament made several bequests and provided for the payment of several debts from the assets in her living trust. The will provided that after all specific bequests were made and debts paid, the remaining funds were to be distributed to plaintiff and the trust was to terminate.

Plaintiff filed for divorce in March 1991. After the complaint was filed, a hearing was held before a domestic relations commissioner. The commissioner restrained the parties from disposing of any assets, but granted plaintiff the right to utilize inherited funds from his mother's estate for "reasonable living expenses." In the fall of 1991, another hearing was held before the commissioner to determine whether plaintiff's living expenses were reasonable. The commissioner recommended that plaintiff be permitted to withdraw up to $3,000 per month from the inherited funds as reasonable living expenses. This recommendation became the order of the court.

Trial was held in August 1992. During the first day and a half of trial, plaintiff was allowed to introduce evidence on all issues before the court. Because plaintiff was representing himself, he was allowed to proffer his own testimony in narrative fashion. Midway through the second day of trial, the court limited testimony and evidence to the question of the validity, interpretation, and enforcement of the prenuptial agreement.

The court ruled that the prenuptial agreement was valid, binding, and unambiguous. The court valued the marital estate at the time of separation and awarded the parties the personal property then in their possession. The court included in the marital estate plaintiff's inheritance from his mother pursuant to the prenuptial agreement. The court ordered each party to execute documents and conveyances to give effect to the prenuptial agreement and the awards of the court. The court awarded defendant the marital home and offset plaintiff's interest therein with other assets awarded to plain-

tiff. After taking into account the money withdrawn by plaintiff from the marital estate during the pendency of the action, the court ordered plaintiff to pay to defendant $27,995. This appeal followed.

## ISSUES

Plaintiff raises several issues on appeal, including the following: (1) whether the trial court erred in holding that the prenuptial agreement was valid and enforceable; (2) whether the trial court erred in limiting the proceedings to the question of the validity and enforceability of the prenuptial agreement; (3) whether the trial court erred in valuing the marital estate at the time of separation rather than the time of trial; and (4) whether the trial court erred in its division of marital property and the award of judgment in favor of defendant.

## ANALYSIS

### Prenuptial Agreement

Plaintiff argues that the trial court erred in ruling that the prenuptial agreement was valid and enforceable in two respects: (1) that he was coerced into signing the agreement and that he did not understand the effect of several provisions in the agreement; and (2) that defendant breached the agreement by failing to convey to him, during the marriage, a one-half interest in the marital home. We disagree.

"[P]re–Nuptial agreements concerning the disposition of property owned by the parties at the time of their marriage are valid so long as there is no fraud, coercion, or material nondisclosure." *Huck v. Huck,* 734 P.2d 417, 419 (Utah 1986). Such agreements are "construed and treated as ... contracts in general." *Berman v. Berman,* 749 P.2d 1271, 1273 (Utah App.1988). Therefore, the first step in interpreting a prenuptial agreement is to look "to the four corners of the agreement to determine the intention of the parties." *Neilson v. Neilson,* 780 P.2d 1264, 1267 (Utah App.1989).

In the present case, the trial court found that neither party was coerced into

signing the agreement. The court also found that the parties discussed the agreement for a period of months prior to their marriage and that each party had an opportunity to review and make changes to the agreement. The court further found that plaintiff was a competent and able attorney who understood, or should have understood, the content and effect of the agreement. To successfully challenge these findings, plaintiff "must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987)). "If the appellant fails to marshal the evidence, the appellate court assumes that the record supports the findings of the trial court and proceeds to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." *Saunders v. Sharp,* 806 P.2d 198, 199 (Utah 1991). Plaintiff has not properly challenged the findings in the instant case. We therefore assume that the record supports the trial court's findings that plaintiff was not coerced into signing the agreement and that plaintiff knew, or should have known, the meaning and effect of the agreement.

Plaintiff further argues that defendant's failure to execute a deed in favor of him as a tenant in common in the home constituted a material breach of the agreement, thus rendering it unenforceable. While trial court found that defendant did not execute a deed in favor of both parties as tenants-in-common, and that the home was not appraised as contemplated by the agreement, it did find that defendant was willing to execute a deed in favor of the parties as tenants-in-common. The court also found that the parties acted as if the home were jointly owned during the marriage, and that they had executed a Deed of Trust pledging the marital home as security for the purpose of repaying plaintiff's debts. The court further found that plaintiff had enjoyed the benefit of the home, and that he had not been prejudiced by defendant's failure to execute a deed. Plaintiff has not properly challenged

these findings. We therefore assume that the record supports the findings that defendant enjoyed the benefit of the home and was not prejudiced by defendant's failure to execute the deed. *See Saunders,* 806 P.2d at 199. In light of the findings, the trial court did not err in concluding that the agreement was valid, binding, and unambiguous.

### Limiting of Proceedings

Plaintiff argues that the trial court erred by limiting the proceedings on the second day of trial solely to the issue of whether the prenuptial agreement was valid and binding. We disagree.

A trial court has broad discretion to determine the manner in which proceedings before it are conducted. *Berrett v. Denver & Rio Grande W. R.R. Co.,* 830 P.2d 291, 293 (Utah App.), *cert. denied,* 836 P.2d 1383 (Utah 1992); *accord* Utah R.Civ.P. 16. We will not interfere with a trial court's decision to limit proceedings unless the trial court abused its discretion. *See Berrett,* 830 P.2d at 293.

In the present case, the trial court limited testimony, for a period of time, to the question of the validity and enforceability of the prenuptial agreement. Since the validity and enforceability of the prenuptial agreement was a central issue as to how the court would determine the value and distribution of the marital estate, the trial court did not abuse its discretion in limiting testimony and evidence to that question.

### Valuation of Marital Estate

Plaintiff argues that the trial court erred in valuing the marital estate at the time of separation rather than at the time of trial. We disagree.

Generally, the marital estate is valued at the time of the divorce decree or trial. *Rappleye v. Rappleye,* 855 P.2d 260, 262 (Utah App.1993); *accord Fletcher v. Fletcher,* 615 P.2d 1218, 1222–23 (Utah 1980); *Peck v. Peck,* 738 P.2d 1050, 1052 (Utah App.1987). However, in the exercise of its equitable powers, a trial court has broad discretion to use a different date, such as the

date of separation, when circumstances warrant. *See Peck*, 738 P.2d at 1052 (marital estate valued at time of separation when one party "acted obstructively"). However, if the trial court uses a date other than the date of the divorce decree, it must support its decision with sufficiently detailed findings of fact explaining its deviation from the general rule. *See Rappleye*, 855 P.2d at 262.

In the present case, the trial court valued the marital estate generally as of the time of separation.[1] In support of this decision, the court found that plaintiff had utilized portions of the marital estate for his own support during the pendency of the action and that defendant had no access to the liquid assets of the estate during that period. The court also found that plaintiff not only enjoyed the benefit of the use of the marital assets for his own support, but also enjoyed the income and other benefits derived from the marital assets during the pendency of the action. The court further found that plaintiff had utilized more of the marital assets than authorized and that plaintiff's use of the marital assets had seriously depleted the marital estate. Additionally, the court found that plaintiff had withdrawn money from the marital estate not only for his own support, but for the support of his daughter and grandchildren. Based on these findings, the court valued the marital estate at the time of separation. Plaintiff has not properly challenged these findings. We therefore assume the record supports the findings. *Saunders*, 806 P.2d at 199. Because plaintiff depleted the liquid assets of the marital estate during the pendency of the action, as well as other factors indicated by the trial court, the court did not abuse its discretion in valuing the marital estate at the date of separation rather than the date of trial.

### Division of Marital Property

Plaintiff argues that the trial court's division of marital property was arbitrary and clearly erroneous. Specifically, plaintiff claims that the trial court erred in awarding to defendant $27,995. We disagree.

Plaintiff misapprehends the standard of review to be applied where the trial court's division of marital property is challenged on appeal. "There is no fixed formula upon which to determine a division of properties in a divorce action[;] the trial court has considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity." *Naranjo v. Naranjo*, 751 P.2d 1144, 1146 (Utah App. 1988) (citations omitted). In dividing marital property, the trial court should consider the following:

the amount and kind of property to be divided, the source of the property, the parties' health, the parties' standard of living and respective financial conditions, their needs and earning capacities, the duration of the marriage, what the parties gave up by the marriage, and the relationship the property division has with the amount of alimony awarded.

*Id.* at 1147–48. "This court will not disturb the trial court's decision [concerning property division] unless it is clearly unjust or a clear abuse of discretion." *Walters v. Walters*, 812 P.2d 64, 66 (Utah App.1991), *cert. denied*, 836 P.2d 1383 (Utah 1992); *accord Smith v. Smith*, 751 P.2d 1149, 1151 (Utah App.1988).

In the present case, the trial court made extensive findings to support its determination that plaintiff should pay defendant $27,955. The court found that even though plaintiff was authorized by the court to withdraw $3,000 per month from the marital estate during the pendency of the action, he withdrew an average of $8,000 per month from March 1991 to September 1991. The court also found that plaintiff's actions severely depleted the "liquid" assets of the marital estate. The court further found that plaintiff derived income and other benefits from the funds under his control during the pendency of the action. After crediting plaintiff for money withdrawn from the es-

---

1. The trial court valued the marital home at $78,500. The court noted that the home was worth $78,500 at the time of separation and that there was "no justifiable reason ... presented for an increase in the value of the home from 1991 to 1992 [the respective dates of separation and divorce]."

tate during the pendency of the action and crediting defendant for money withdrawn from the estate for attorney fees, the court found that it was reasonable for plaintiff to pay to defendant $27,955. Plaintiff has not properly challenged these findings, but merely asserts that they are clearly erroneous. We therefore assume the record supports the findings. *Saunders*, 806 P.2d at 199.

Based on the trial court's findings, plaintiff withdrew from the marital estate considerably more than he was authorized to withdraw. The court ordered plaintiff to pay to defendant $27,955 to offset plaintiff's depletion of the marital estate, thereby reaching a fair and equitable division of marital property. Plaintiff has not shown how the trial court abused its discretion, in light of its findings, by ordering him to pay to defendant $27,955.

## CONCLUSION

The trial court did not err in ruling that the prenuptial agreement was valid and binding. The trial court did not abuse its discretion by limiting the proceedings. The trial court did not abuse its discretion by valuing the marital estate at the time of separation. The trial court did not abuse its discretion by ordering plaintiff to pay to defendant $27,955. We have reviewed plaintiff's additional issues on appeal and conclude that they are without merit. *See State v. Carter*, 776 P.2d 886, 896 (Utah 1989) (appellate court need not address every argument, issue, or claim raised on appeal).

The judgment of the trial court is therefore affirmed.

BILLINGS and ORME, JJ., concur.