**2024 UT App 157**

# THE UTAH COURT OF APPEALS

MARI HOIDAL,
Appellee and Cross-appellant,

*v.*

JOHN BERRY,
Appellant and Cross-appellee.

Opinion
No. 20220291-CA
Filed October 31, 2024

Third District Court, Salt Lake Department
The Honorable Heather Brereton
No. 194900847

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellant and Cross-appellee

Julie J. Nelson, Kayla Quam, and Skylar Walker,
Attorneys for Appellee and Cross-appellant

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      John Berry and Mari Hoidal married and later divorced. Both parties appeal from the district court's property division and alimony award. Berry argues the court abused its discretion by valuing the marital estate at the time the parties separated, by crediting Hoidal with the value of phantom stocks that were paid after the parties separated, and by refusing to consider certain of Berry's claimed expenses in the alimony calculation. Hoidal challenges the court's alimony calculations, as well as the court's failure to require reimbursement of previous childcare expenses and the denial of her request for attorney fees. We affirm in part, and we reverse and remand the matter in part.

BACKGROUND

¶2   Berry and Hoidal were married in August 2012, and their only child (Child) was born in May 2018. Hoidal "had various assets at the time of the marriage." The parties lived in a home purchased by Hoidal three years before the marriage, and while they were married, Hoidal "paid the mortgage and other costs associated with the home" and "Berry paid for the parties' car payments, car insurance, and some of the parties' joint food expenses." The parties did not have joint credit cards, they maintained separate bank accounts, and they kept their finances separate. The only exceptions to the practice of separate finances were those occasions when Hoidal gave money to Berry "to help him pay credit card and other debts and to pay off one of the cars driven by the couple during the marriage."

¶3   Seven months after Child's birth, the parties got into an argument at a restaurant, which ended in Berry driving away and leaving Hoidal and Child stranded at the restaurant. The parties then separated; Hoidal and Child resided with her parents, while Berry continued to live in the marital home until a court order returned possession of the home to Hoidal seven months later.

¶4   Following the separation, Berry began criticizing, threatening, and harassing Hoidal and others close to her. Berry went so far as to yell at and spit in the face of Hoidal's father (Dr. Hoidal), and he "repeatedly contacted" Hoidal's employer with accusations "of kidnapping and addiction and indicating his child was in danger." Berry locked Hoidal out of the marital home while the parties were separated, but Hoidal nonetheless paid the mortgage and cared for Child; Berry "did not in any way contribute to the marital estate during separation" and "caused [Hoidal] unnecessary stress and anxiety."

¶5   Hoidal filed for divorce in February 2019. She requested sole physical and legal custody of Child and asked that the district court allow Berry no parent-time, based on serious concerns about

his behavior toward Hoidal, her family, and those at her workplace.

¶6 The district court held a hearing on the matter on May 29, 2019, resulting in the issuance of temporary orders. The court indicated that it was "very concerned about what appear[ed] to be significant impairment of [Berry], based upon [a] threat of self-harm, the level of hostility being directed to [Hoidal] and her family, the lengths he [was] going to in order to disparage her and her family, and the concerns expressed by the guardian ad litem." Based on these concerns, the court awarded Hoidal sole physical and legal custody of Child and awarded Berry supervised parent-time. The court ordered Berry "to vacate the marital home" and awarded no alimony at that time to either party but required Berry to pay child support to Hoidal.

¶7 In July 2019, the district court granted Hoidal a temporary restraining order against Berry, limiting Berry's contact with Hoidal and prohibiting him from contacting her parents and sister. That same month, the court issued several additional orders, explicitly noting that "all orders from the May 29, 2019 hearing on this matter remain in full force and effect" unless specifically modified in the temporary restraining order—and nothing pertaining to custody, alimony, or child support was changed therein. After an evidentiary hearing held in September 2019, the court issued additional temporary orders, this time awarding temporary alimony of $1,574 per month to Berry.

¶8 In April 2020, Berry was charged with five counts of violating the restraining order based on his continued harassment of Hoidal and her family, including "emailing fifteen of Dr. Hoidal's employers, co-workers and employees at the University of Utah." And in July 2020, Berry was criminally charged with one count of stalking and one count of violating a pre-trial protective order, based on Dr. Hoidal's report that Berry "refuse[d] to leave [them] alone." Throughout the remainder of that year, Berry

continued to harass and threaten Hoidal, her family, and her superiors at work. Because of this continued antagonism, Hoidal's superiors at work were so concerned for Hoidal's safety and mental health that they contemplated moving her into a diminished role at work with reduced responsibility.

¶9     In April 2021, the parties entered into a partial stipulation resolving custody and parent-time, agreeing that a bifurcated decree of divorce should be entered. The district court entered an order dissolving the marriage between Berry and Hoidal, awarding Hoidal sole physical and legal custody of Child subject to Berry's parent-time, maintaining a restraining order against Berry, and reserving all other issues for trial.

¶10     Trial occurred in May and July of 2021, following which the district court entered Findings of Fact and Conclusions of Law. The court determined that based on the facts and circumstances of the case, the marital home "should be valued as of the date of the parties' separation in December 2018." The court's findings supporting this valuation date centered on Hoidal's continued contributions after separation—including paying "all costs" associated with the home, continuing "to work and advance in her company," and performing "all childcare responsibilities both financially and emotionally"—and Berry's corresponding failure to contribute—including failing to "bring income into the marital estate" or "pay any marital expenses," failing to share in any childcare obligations or expenses," and taking "unreasonable and concerning" actions toward Hoidal that caused her "unnecessary stress, anxiety, and fear" and "negatively affected her employment."

¶11     As part of the court's consideration of several financial accounts, it addressed a specific investment account belonging to Hoidal that had been "funded with monies received in phantom stock." The court found that this account was "created after the date of separation with compensation earned after the date of

separation" and therefore concluded that Berry had "no interest in this account."

¶12 In relation to Child, Berry was ordered to reimburse Hoidal nearly $17,000 for half of the work-related childcare expenses incurred prior to trial, as well as to pay half of all such expenses going forward. The court also calculated Berry's monthly child support obligation to be $348.

¶13 The court awarded alimony to Berry, who was unemployed at the time of trial and whose "sources of income consisted of unemployment benefits and [temporary] alimony." As part of the alimony determination, the court considered Berry's financial declaration and testimony at trial. The court accepted most of Berry's declared expenses, notwithstanding the fact that some of the listed expenses, such as utilities and health insurance expenses, were expenses that he was not currently paying and despite the fact that he "did not support any of his expenses with supporting documentation other than his rent payment." However, the court refused to consider Berry's child support obligation, attorney fees, and student loan payments because these were "not marital expenses." The court also adjusted some listed expenses downward but actually increased Berry's childcare expense. This all resulted in a total monthly alimony award of $1,707, to continue for "an additional 44 months."

¶14 As to attorney fees, the district court found that "Berry's actions during the pendency of this matter have resulted in some of [Hoidal's] attorney fees." But the court also determined that "Berry does not have the financial ability to pay [Hoidal's] fees." "After consideration of the facts presented and balancing equities in this matter," the court ordered that each party "pay their own attorney fees."

¶15 Ultimately, Berry was awarded nearly $195,000 to account for his share of the equity in the home, his half of two financial

accounts deemed to be marital property, and half of Hoidal's 401(k)—each of these assets being valued at the time of the parties' separation. The remaining financial accounts were awarded to Hoidal.

¶16    After the entry of the district court's order, Berry filed a motion requesting additional or amended findings and an amended judgment. Berry raised issues relating to, among other things, the court's decision to value assets as of the date of separation, the court's refusal to consider certain of his expenses in the alimony calculation, and the court's order that he reimburse Hoidal for childcare expenses incurred during the parties' separation.

¶17    In response, the district court issued a ruling modifying its prior order. The amended order did not change the previous asset valuation date or alimony calculation. But the court was persuaded that Berry should not be ordered to reimburse Hoidal for past childcare expenses, reasoning that the court had "specifically removed any expense for childcare in calculating the amount of the temporary alimony award" and concluding that "reimbursement for these past expenses is not equitable given the Court's prior ruling and the respective finances of the parties."

¶18    Berry thereafter appealed to this court, challenging several aspects of the district court's rulings. And Hoidal responded by raising several issues in a cross-appeal.

ISSUES AND STANDARDS OF REVIEW

¶19    Berry appeals three of the district court's actions: (1) the court's determination that both the marital home and Hoidal's 401(k) should be valued as of the time of separation instead of the time of trial, (2) the court's decision that Hoidal's investment account containing payments from her phantom stock was her separate property, and (3) the court's refusal to include Berry's

child support and student loan obligations when calculating his alimony award.

¶20 Hoidal cross-appeals, challenging the following actions of the district court: (1) the court's consideration of several of Berry's asserted expenses that she argues were not sufficiently supported by the evidence, (2) the court's decision to not require Berry to reimburse her for childcare expenses that occurred during the parties' separation, and (3) the court's denial of her request for attorney fees.

¶21 "In divorce actions, a district court is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Gardner v. Gardner*, 2019 UT 61, ¶ 18, 452 P.3d 1134 (quotation simplified). "Accordingly, we will reverse only if (1) there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error; (2) the factual findings upon which the award was based are clearly erroneous; or (3) the party challenging the award shows that such a serious inequity has resulted as to manifest a clear abuse of discretion." *Id.* (quotation simplified). And "because we can properly find abuse only if no reasonable person would take the view adopted by the [district] court, appellants have a heavy burden to show that an alleged error falls into any of these three categories." *Id.* (quotation simplified).

ANALYSIS

I. Berry's Appeal

A.     Date of Valuation

¶22 Berry first challenges the district court's decision to value the marital home and Hoidal's retirement account as of the date of separation and not as of the date of trial. As a general rule, "the

marital estate is valued at the time of the divorce decree or trial." *Shepherd v. Shepherd*, 876 P.2d 429, 432 (Utah Ct. App. 1994). But "a [district] court has broad discretion to use a different date, such as the date of separation, when circumstances warrant." *Id.* at 432–33. "However, if the [district] court uses a date other than the date of the divorce decree, it must support its decision with sufficiently detailed findings of fact explaining its deviation from the general rule." *Id.* at 433.

¶23 Berry argues that the situations in which a district court may apply an alternate date of valuation, such as the date of separation, "are limited" to the three situations specifically enumerated by this court in *Peck v. Peck*, 738 P.2d 1050 (Utah Ct. App. 1987). For various reasons, we disagree.

¶24 In *Peck*, this court remanded a matter for the district court to make "findings on the specific values of the assets" divided among the divorcing parties. *Id.* at 1051. One of those assets was a family business that had earned between $750,000 and $1,000,000 the year prior to separation, but those earnings had then fallen, resulting in the business having a negative net worth of $50,400 by the time of trial, with the controlling party having "closed all the corporate accounts and thereafter ceased all record keeping" shortly after the parties had separated. *Id.* As part of the remand decision, this court provided some limited instruction to guide the district court in its required asset valuation. *Id.* at 1052. This court acknowledged the general rule that "[a]ssets are usually valued at the time of the divorce decree" but then instructed, "However, where one party has dissipated an asset, hidden its value, or otherwise acted obstructively, the [district] court may, under its broad discretion, value the property at an earlier date, i.e., separation." *Id.* This court then recognized that "the [district] court might therefore value [this family business] as of the time the parties separated." *Id.*

¶25 Berry seizes on the enumerated list from *Peck*—i.e., "where one party has dissipated an asset, hidden its value, or otherwise acted obstructively," *id.*—to argue that a district court is allowed to value assets at a time different from the date of trial or entry of the divorce decree *only* when one or more of these three specific situations are present. But such an interpretation is far too narrow.

¶26 First, there is no such limiting language in the *Peck* case itself. The language in the opinion simply provides that when any of these three situations *are* present, it would be appropriate for the district court to exercise its discretion and value property at an earlier date than would normally be utilized. *See id.* But there is no language in *Peck* stating that an earlier valuation date would be appropriate *only* when one of these three enumerated situations is present. *See id.*

¶27 Berry cites in support of his argument several additional cases that have applied an earlier valuation date when the circumstances of those cases met one or more of the three situations specifically enumerated in *Peck*. But Berry points us to no language from those cases that would suggest that an earlier valuation date can be set *only* when one or more of the three *Peck* situations are present. Instead, these cases essentially reiterate the same language contained in *Peck*, providing for a different valuation date *when* these situations occur, not *only when* they occur. *See, e.g., Goggin v. Goggin*, 2013 UT 16, ¶ 49, 299 P.3d 1079 ("Where one party has dissipated an asset, hidden its value or otherwise acted obstructively, the [district] court may, in the exercise of its equitable powers, value a marital asset at some time other than the time the decree is entered, such as at separation . . . ." (quotation simplified)).

¶28 Second, there are several other appellate decisions that have been issued since *Peck* that state the rule for using an earlier valuation date with broader language, which would suggest that the discretion to choose an earlier valuation date is not as limited

as Berry argues. *See, e.g.*, *Petrzelka v. Goodwin*, 2020 UT App 34, ¶ 47, 461 P.3d 1134 ("While a court should generally value the marital estate at the time of the divorce decree or trial, a court has broad discretion to value the parties' marital assets at a different time, such as that of separation, *if it determines that the circumstances so warrant*." (emphasis added) (quotation simplified)); *Shepherd v. Shepherd*, 876 P.2d 429, 432–33 (Utah Ct. App. 1994) ("[I]n the exercise of its equitable powers, a trial court has broad discretion to use a different date, such as the date of separation, *when circumstances warrant*." (emphasis added)).

¶29 Third, and importantly, other appellate decisions *have* allowed for earlier valuation dates based on other factors. *See, e.g.*, *Jacobsen v. Jacobsen*, 2011 UT App 161, ¶ 39, 257 P.3d 478 ("The [district] court clearly explained its rationale for not using the 2007 values and, thus, did not abuse its discretion. The [district] court's findings explain that the only evidence to support the value of the various personal property items—a washer, a dryer, a television, and a dining room set—was the purchase price. Neither party presented evidence supporting the 2007 values."), *cert. denied*, 263 P.3d 390 (Utah 2011).

¶30 One particularly relevant example is this court's decision in *Donnelly v. Donnelly*, 2013 UT App 84, 301 P.3d 6, *cert. denied*, 312 P.3d 619 (Utah 2013). There, the court reviewed the district court's decision to value a husband's retirement account as of the date of separation rather than at the time of the trial five years later when the account's value had increased significantly. *Id.* ¶¶ 42–43. The district court based its decision on "a combination of factors" that included the wife's "failure to contribute to the account's increase in value during the parties' separation," the wife's "failure to contribute to [the husband's] ability to work during the separation," the "extraordinarily long" separation length of five years, and "the hostilities between the parties and [the wife's] actions during the separation." *Id.* ¶ 43. The *Donnelly* court determined that "the district court gave sound reasons for

its decision" and that the wife had "failed to persuade" the court that this decision was "not adequately supported and explained"; the court therefore affirmed the district court's decision to apply the earlier date under these circumstances. *Id.* ¶ 47.

¶31 Berry admits that the *Donnelly* court outlined several factors that "resonate with this case," but he argues that *Donnelly* "is not applicable precedent" because the decision "hinges on inadequate briefing." But this is a mischaracterization of the case. Although the court did state that the wife had "fail[ed] to acknowledge on appeal" several factors that the district court relied on in making its valuation decision, this was in the context of explaining the wife's failure to carry her burden of persuasion; the court did not decline to reach the merits of the issue due to inadequate briefing. *Id.* ¶¶ 46–47. Berry further argues that because the district court in *Donnelly* made general reference to "all of the circumstances of this case," *id.* ¶ 43 (quotation simplified), as supporting its decision, those unspecified factors may have included one of the situations specifically enumerated in *Peck*. But it is unreasonable to think that, were the situations enumerated in *Peck* as limiting as Berry argues, the court could have determined in *Donnelly* that "[t]he district court gave sound reasons for its decision" while completely failing to make any mention of the crucial *Peck*-satisfying situation on which the court's analysis must have hinged. *Id.* ¶ 47. Nor are we convinced by Berry's argument that the wife in *Donnelly* was apparently "wasting money" and that this satisfied the *Peck* situations involving dissipation or obstruction—mainly because the *Peck* situations speak to dissipation or obstruction *regarding the asset being valued* and not just to a dissipation of the marital estate in general or obstructive behavior unrelated to the valuation of the particular asset, *Peck v. Peck*, 738 P.2d 1050, 1052 (Utah Ct. App. 1987). And there is no suggestion in *Donnelly* that the wife ever dissipated the retirement account or displayed obstructive behavior related to that account.

¶32    Fourth, our broader interpretation of when the district court may depart from the default valuation date is more in line with the considerable discretion district courts have to divide property, as well as the overarching equitable considerations that should guide that division. "The appropriate distribution of property varies from case to case, and the overriding consideration is that the ultimate division be equitable—that property be fairly divided between the parties, given their contributions during the marriage and their circumstances at the time of the divorce." *Goggin v. Goggin*, 2013 UT 16, ¶ 48, 299 P.3d 1079 (quotation simplified).

¶33    Thus, based on these various considerations, we remain unconvinced that *Peck* created a rule providing that the district court may exercise its discretion to apply a different date of valuation in only three specific situations. And therefore, the district court did not misapply the law in considering circumstances beyond those listed in *Peck* in arriving at its valuation determination. Furthermore, because we determine that this broader interpretation is more in harmony with the equitable principles that guide a district court's property division, we decline Berry's invitation to overrule *Donnelly* or other related cases that have applied this less limited approach.

¶34    Berry additionally argues that the district court's valuation decision was "without adequate supporting findings." This argument is primarily related to his main argument that we have rejected, that is, he argues the findings were not adequate because they did not establish one of the three situations enumerated in *Peck*. However, Berry also argues that even if this court disagrees with his narrow interpretation of *Peck*, "the district court's findings do not support valuing the marital estate as of an alternate date." We reject this argument because the district court's findings supporting an earlier valuation date are numerous, clear, and in harmony with equitable principles. These findings included that "Hoidal continued to pay all mortgage

payments and other costs associated with the . . . home during the parties' separation," that "Hoidal performed all childcare responsibilities both financially and emotionally with no help or support from [Berry] during the parties' separation," that "Berry did not bring income into the marital estate during separation and did not pay any marital expenses," that "Berry did nothing to contribute to [Hoidal's] ability to work and support [Child]," that "Hoidal continued to work and advance in her company during the partes' separation despite [Berry's] actions which negatively affected her employment," that "Berry neither contributed to the marital estate financially nor emotionally during the parties' separation," that Berry "did nothing to contribute to the accumulation of any retirement funds or to increase the value of" the home, that "the parties were at odds with one another during" their separation, and that Berry's actions during separation were "unreasonable and concerning." And such findings—many of which are similar to those relied upon in the *Donnelly* case—more than adequately support the court's decision to use an earlier valuation date.

¶35   Berry pushes back, taking issue with the court's findings that touched on his disturbing conduct toward Hoidal, her family, and her superiors at work, arguing that "asset division is not to be used as a punishment tool." We agree that "there is no place for contempt sanctions in an equitable distribution of marital property" and that a district court "does not have discretion to distribute marital property in a way that is designed to punish a party's contemptuous behavior." *Goggin*, 2013 UT 16, ¶ 52. However, we are not convinced that the court's various references here to Berry's troubling behavior signified that the court was using the property division as any sort of sanction. Instead, our understanding is that the court was explaining that Berry was not only failing to contribute in any manner to the marital estate during separation, but he was actively taking serious and extreme actions that were negatively affecting the value of the marital estate during this period. And such a consideration is a valid one

in assessing the contributions the parties each made to the marital estate after separation and in assessing what valuation date is most equitable.

¶36 Finally, Berry raises a "commingling" argument, asserting that his portion of the post-separation appreciation on the home and Hoidal's 401(k) was commingled with Hoidal's post-separation contributions, rendering the whole amount marital property. He asserts that "it is fundamentally inequitable" for a court to value appreciating property as of the date of separation because "the spouse holding the property realizes and keeps appreciation on both halves of the asset and needs only pay the other spouse that spouse's pre-appreciation share." But the case Berry cites in support of this argument addresses when "[*p*]remarital property loses its separate identity and becomes a part of the marital estate," and the case makes no mention of commingling related to *post-separation* property. *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 20, 147 P.3d 464 (emphasis added). Moreover, the equitable goals of property division are precisely the reason for this exception allowing a district court to depart from the default valuation date when such would be the more equitable result. *See Shepherd v. Shepherd*, 876 P.2d 429, 432–33 (Utah Ct. App. 1994) ("[*I*]*n the exercise of its equitable powers*, a [district] court has broad discretion to use a different date, such as the date of separation, when circumstances warrant." (emphasis added)). And, indeed, in the circumstances here, we can understand how the district court believed that the earlier valuation date would be the more equitable choice, admittedly giving Hoidal the benefit of the appreciation on assets to which she was still actively contributing, yet preventing—as would have happened with applying the default valuation date—a windfall to Berry of half of Hoidal's post-separation contributions and their appreciation even though he "contributed to the marital estate [neither] financially nor emotionally during the parties' separation."

¶37    In sum, we see no misapplication of the law or serious inequity that would indicate an abuse of the district court's discretion under the circumstances of this case.

B.    Phantom Stocks

¶38    The district court determined that an investment account funded with certain phantom stock payments from Hoidal's employment was "created after the date of separation with compensation earned after the date of separation" and that, therefore, "Berry has no interest in this account." Berry challenges this award, arguing that "the fact that the stocks were liquidated after separation does not make them separate property if they were originally marital property." But Berry's framing seems to mistake the nature of the asset in question.

¶39    Phantom stocks "essentially are bonus plans that grant not stock but rather the right to receive an award based on the value of the company's stock." *Stock Options, Restricted Stock, Phantom Stock, Stock Appreciation Rights (SARs), and Employee Stock Purchase Plans (ESPPs)*, Nat'l Ctr. for Emp. Ownership, https://www.nceo.org/articles/stock-options-restricted-phantom-sars-espps [https://perma.cc/3YEB-U3J9]. They "provide[] a cash or stock bonus based on the value of a stated number of shares, to be paid out at the end of a specified period of time." *Id.*

¶40    Thus, Hoidal did not, as Berry suggests, own stock prior to separation that was liquidated sometime after separation. Instead, Hoidal had the right to earn a cash bonus from her employer for remaining at her job for a period of three years. Her employer paid her that cash bonus in May 2020 for meeting the three-year requirement. Berry points us to no law suggesting that it is an abuse of the district court's discretion to consider such a bonus to be "earned" at the completion of the three years of employment—when the condition precedent for the bonus was finally satisfied. Furthermore, we particularly see the logic of such an application in the circumstances before us, where Berry ultimately worked

*against* Hoidal satisfying the condition precedent for the bonus by, as the court found, "negatively affect[ing] her employment" after the parties separated.

¶41 Thus, we see no abuse of discretion in the court's determination to consider the phantom stock payment as Hoidal's separate property where the condition precedent for the phantom stock bonus was not completed until after the date of separation and where Berry's actions actually worked against Hoidal's ability to meet that condition.

### C. The Alimony Calculation

¶42 Finally, Berry argues that the district court abused its discretion in refusing to include his child support and student loan obligations when calculating the alimony award. We address each expense in turn.

### 1. Berry's Child Support Obligation

¶43 Berry argues that his "child support payment should be factored into the alimony calculation as either one of his reasonable expenses or a deduction from his income." We agree that failure to do so was an abuse of the district court's discretion.

¶44 There is an "established process to be followed by courts considering an award of alimony." *Fox v. Fox*, 2022 UT App 88, ¶ 20, 515 P.3d 481 (quotation simplified), *cert. denied*, 525 P.3d 1263 (Utah 2022); *see also Rule v. Rule*, 2017 UT App 137, ¶ 19, 402 P.3d 153. First, a court must "assess the needs of the parties, in light of their marital standard of living." *Fox*, 2022 UT App 88, ¶ 20 (quotation simplified). Second, a court "must determine the extent to which the receiving spouse is able to meet his or her own needs with his or her own income." *Id.* (quotation simplified). Then, "only if the court determines that the recipient spouse cannot meet his or her own needs, the final step in the process is for the court to assess whether the payor spouse's income, after meeting

his or her needs, is sufficient to make up some or all of the shortfall between the receiving spouse's needs and income." *Id.* (quotation simplified).

¶45 Under the second step of this process, the district court was required to consider whether Berry had sufficient income to meet his own needs. The child support obligation of $348 is an amount Berry is required to pay each month, and the money that he expends for this will be unavailable to meet his other needs. Thus, the district court's failure to consider the child support obligation as impacting this calculation does not follow the established process. *Cf. Andrus v. Andrus*, 2007 UT App 291, ¶ 19, 169 P.3d 754 ("A correct calculation of his [or her] disposable income is an important step in determining [a spouse's] ability to pay . . . .").

¶46 Hoidal responds by arguing that the child support amount *was* included in the district court's calculations because the court increased Berry's childcare expense by $250 from the childcare expense he listed on his financial declaration. She claims that this $250 increase is only a "minimal[] reduc[tion]" from the $348 child support payment amount, and she argues that this small reduction and reclassification was within the district court's broad discretion.

¶47 But there is nothing in the district court's reasoning that suggests that this was the logic behind the court's determination. Although the court did increase Berry's childcare expense by $250 (from $750 to $1,000), there is nothing in the record to indicate that this was an attempt to include the child support payments within the childcare category. Instead, it appears that this adjustment resulted from a realization that Berry's separate responsibility to pay his share of the childcare costs would be an amount larger than the $750 estimate on his financial declaration. And indeed, this is consistent with the documentation before the court showing the monthly daycare costs alone were well above the $1,500 that would be available by each party paying $750 in

childcare costs. Furthermore, the court was explicit that it did not consider child support to be a marital expense and that it arrived at its calculation of Berry's reasonable monthly expenses "by *removing* child support," as opposed to decreasing and recategorizing it. (Emphasis added.)

¶48    Thus, because Berry will be required to pay approximately $1,000 per month for his half of work-related childcare expenses *in addition to* the $348 child support payment, failure to consider both as impacting his financial need and resources was an abuse of the district court's discretion. We therefore reverse and remand this matter for the entry of an alimony payment $348 greater than that previously ordered.[1]

2.      Berry's Student Loans

¶49    In his financial declaration presented to the district court, Berry included an expense of $750 per month for a student loan payment. The district court refused to include this amount in the calculation of Berry's expenses, finding, "Berry did not pay his student loan during the marriage and does not pay this expense currently." We see no abuse of discretion in the court's determination.

¶50    Berry argues that even if his student loan payments were deferred during the marriage, they should still count as an

_____

1. Because there can be no dispute about the amount of the child support obligation—the district court's order having set the amount at $348—we need not remand this issue for the court to make a factual finding as to the amount. Furthermore, because the district court previously determined that Hoidal's income "exceeds her current expenses" by over $4,000 and that she "had the ability to pay alimony" to cover Berry's shortage of $1,707 in meeting his expenses, it is clear Hoidal would have the ability to pay alimony even when Berry's shortage increases slightly by the child support amount of $348.

expense because they are "still a legal obligation which the government is owed and which [Berry] was legally obligated to pay on a monthly basis during the marriage." While the obligation to pay the loan amount at some future point may have existed during the marriage, because those loans were deferred, there was no obligation to make monthly payments during the marriage and the marital standard of living did not include making these payments. Furthermore, Berry does not directly address the finding that he is currently not making student loan payments, nor does he suggest that the commencement of such payments is set to occur at any point in the near future. It would hardly be appropriate for the district court to award alimony to cover payments that the parties never paid during their marriage and that Berry is not paying now, that is, amounts that reflect neither the marital standard of living nor Berry's current need. We therefore affirm the district court's refusal to consider student loan payments in the calculation of Berry's expenses.

## II. Hoidal's Cross-appeal

### A. Berry's Expenses

¶51 Hoidal raises challenges related to several other of Berry's expenses, arguing that he failed to provide sufficient support for various asserted expenses, that some of the expenses were costs he was not currently paying, and that some of them were not part of the marital standard of living.

¶52 As to her sufficiency-of-the-evidence challenge, Hoidal points to the district court's finding that "Berry did not support any of his expenses with supporting documentation other than his rental payment." But notwithstanding the lack of documentary evidence demonstrating Berry's expenses, there *was* evidence of each of Berry's expenses presented to the court in the form of his financial declaration (made under penalty of law) as well as his (albeit sometimes brief) testimony at trial regarding these expenses. And, after considering this evidence, the court

explained precisely how it arrived at Berry's monthly expense amount, specifically listing which expenses the court increased or decreased in the calculation and which expenses were not included at all, and then stating that "the remaining expenses [were] consistent with the parties' standard of living at the time of separation" and that the resulting expenses were "reasonable monthly expenses." *See Eberhard v. Eberhard*, 2019 UT App 114, ¶ 36, 449 P.3d 202 ("A district court may not merely restate the recipient spouse's testimony regarding [his or] her monthly expenses; instead, the court must state that the calculation of monthly expenses is reasonable and must explain how it arrived at the monthly amount, or at least from the record, allow us to make this determination ourselves." (quotation simplified)). Thus, there was sufficient supporting evidence underlying the district court's factual findings regarding expenses, and those findings are not clearly erroneous. *Rothwell v. Rothwell*, 2023 UT App 50, ¶ 81, 531 P.3d 225 (determining that one party's estimate on an expense "could support the court's imputation of this expense, even in the absence of further documentation" and even where the estimate was "contrary to [the expert's] estimate"), *cert. denied*, 537 P.3d 1011 (Utah 2023).

¶53 As to the fact that some expenses included in the calculation of Berry's need were not expenses that he was currently paying, we recognize that this does not always prohibit a district court from considering such expenses as reasonable expenses. As this court has previously recognized, "In many cases, the level of expenses and the standard of living of the separated parties at the time of trial will not be representative of the parties' customary or proper status or circumstances" because "a party's current, actual expenses may be necessarily lower than needed to maintain an appropriate standard of living for various reasons, including, possibly, lack of income." *Rule v. Rule*, 2017 UT App 137, ¶ 16, 402 P.3d 153 (quotation simplified). "We have therefore cautioned against determining alimony based upon actual expenses at the time of trial . . . ." *Id.* Thus, even when a

party cannot currently afford and therefore does not currently pay for expenses that were previously covered by the marital standard of living, they may still be counted as reasonable expenses to consider in an alimony calculation. Accordingly, current nonpayment alone is insufficient to indicate an abuse of discretion on the part of the district court in including these expenses in the alimony calculation.

¶54    As to Hoidal's assertion that some of Berry's expenses were not part of the marital standard of living, this seems to be solely with reference to post-separation debt incurred by Berry. Hoidal argues that "it was not part of the marital standard of living to incur debts to meet the parties' needs." But even still, we do not see that it would be an abuse of the district court's discretion to include debt payments in the calculation of Berry's needs if the court determines that such debt was created by the recent inability of Berry's income to cover his reasonable expenses. And here, where the district court first reduced the debt expense by nearly half and then stated that "the remaining expenses are consistent with the parties' standard of living at the time of separation," it seems clear that the district court was following the appropriate procedure of looking at the marital standard of living and including in its calculations only that portion of the debt that it found to be reflective of that standard of living.

¶55    Thus, the district court's findings had sufficient support, and the court appropriately applied the relevant law. We therefore see no abuse of discretion in the district court's treatment of the various expenditures that Hoidal challenges on appeal.

B.    Childcare Reimbursement

¶56    Hoidal argues that the district court abused its discretion in reversing its order requiring Berry to reimburse her for childcare expenses incurred between separation and trial. She argues that Berry has a statutory duty to share in work-related

childcare expenses, *see* Utah Code § 81-6-209(1), and that courts are not permitted "to release parents from this duty for equitable reasons such as inability to pay." We are unconvinced that this is an accurate representation of the logic underlying the district court's decision.

¶57    The district court initially ordered that Berry reimburse Hoidal for work-related childcare expenses that were incurred during the parties' separation. Berry thereafter challenged this order in his motion for an amended judgment, pointing out that the court had "made [him] retroactively responsible for childcare expenses without his temporary alimony award being also retroactively adjusted to account for the childcare expenses" and requesting that the court "adjust its money award to either retroactively adjust alimony or cancel the retroactive adjustment of childcare expenses."

¶58    The district court apparently agreed with Berry that if it was going to order the reimbursement of these childcare costs, it would be equitable to also consider how those costs would have impacted the temporary alimony being paid to Berry during that same period. And the court apparently recognized that if it had considered these childcare costs, Berry's alimony award would have been higher to cover those expenses and, thus, the retroactive payment of childcare would effectively be offset by a retroactive alimony award. The court explained as follows:

> Considering equitable principles, the Court declines to make an award for reimbursement of work related childcare expenses incurred by [Hoidal] after the parties separated. During the parties' separation, [Berry] was unable to meet his financial needs and was in need of financial support from [Hoidal]. The Court entered a temporary alimony award and specifically removed any expense for childcare in calculating the amount of the

temporary alimony award. The Court concludes that reimbursement for these past expenses is not equitable given the Court's prior ruling and the respective finances of the parties.

¶59   When considered in context, we do not see that the district court was asserting that Berry need not retroactively pay childcare costs because he was having a difficult time with his finances. Instead, the court recognized Berry's obligation to pay but also realized, given the respective financial circumstances of the parties, that considering childcare costs would ultimately work to increase Berry's alimony award by an identical amount— amounting to an offset to Berry. And considering the broad discretion the district court has in such matters, we cannot say that the court abused its discretion in so reasoning in this matter and in choosing to forgo ordering the offsetting awards to each party that would flow from the child support award and resulting concurrent alimony award.

C.    Attorney Fees

¶60   Hoidal requested attorney fees under Utah Code section 78B-5-825, which provides the general rule that "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code § 78B-5-825(1). This section also provides, however, that a court may, in its discretion, award no attorney fees if "the court enters in the record the reason for not awarding fees." *Id.* § 78B-5-825(2). The district court found, "Berry's actions during the pendency of this matter have resulted in some of [Hoidal's] attorney fees," but then, "[a]fter consideration of the facts presented and balancing equities" and after determining that "Berry does not have the financial ability to pay [Hoidal's] fees," the court declined to award Hoidal attorney fees. Hoidal argues

that this finding was clearly erroneous considering Berry's "substantial property award."

¶61    Hoidal asserts that, as an initial matter, she is the prevailing party and that the district court "impliedly determined that [Berry's] actions during the pendency of this matter were without merit and not brought in good faith." Even assuming we agree with that assertion—the truth of which seems uncertain at best— we are nonetheless unconvinced that the court's finding as to Berry's ability to pay was clearly erroneous.

¶62    The district court entered an alimony award in favor of Berry, therein determining that his reasonable expenses "exceeded his imputed income" by $1,707. And notwithstanding that he received a property award of nearly $195,000, he, as Hoidal recognized, claimed over $233,000 in debts "and testified as to their details." In the face of this evidence, and even with the property award, we cannot say that the court's finding that Berry does not have the ability to pay Hoidal's attorney fees was clearly erroneous.[2]

CONCLUSION

¶63    As to Berry's appeal, we determine that the district court did not abuse its considerable discretion in choosing to value the home and Hoidal's 401(k) as of the date of separation. Nor did the court abuse its discretion in determining the phantom stock payment to be Hoidal's separate property or in refusing to include Berry's student loan among his reasonable expenses. We thus affirm on these issues. However, the court did abuse its discretion

---

2. Berry requests an award of attorney fees because, he asserts, all of Hoidal's cross-appeal arguments "are unpreserved, inadequately briefed, or fail to grapple with the basis of the district court's decision below." We do not agree with this characterization of Hoidal's cross-appeal claims, and we decline to award attorney fees to Berry.

in failing to account for the child support payment in the alimony calculation, and we reverse and remand this matter for the court to increase the alimony payment by that amount.

¶64 As to Hoidal's cross-appeal, we see no abuse of the district court's discretion in its treatment of Berry's asserted expenses, in its reconsideration of the reimbursement of past childcare expenses, or in its refusal to award attorney fees. We therefore affirm these aspects of the court's ruling.

––––––––––